Thorp *et al. v.* McCullum *et al.*

Henry B. Thorp *et al.*, plaintiffs in error, v. William McCullum *et al.*, defendants in error.

*Error to Madison.*

The Court will allow, and compel an administrator to amend a deed made on sale of real estate under leave of Court, by inserting in the deed a recital of the order of sale at large, in compliance with the statute under which it was executed.

Where a sale has been regularly and fairly made, by an administrator under an order of Court, for a valuable consideration, and the deed executed by one administrator only, where there are two, the Court will not permit advantage to be taken of such defective execution of a power, but will compel the co-administrator to join in the execution of the power. If it were a mere power, the Court would not, but where there is a duty and trust to be performed by the proper exercise of the power, the Court will compel it.

The principle of equity is, that trustees and others, sustaining a fiduciary and confidential relation, cannot deal on their own account with the thing, or the persons falling within that trust, or relationship. This rule is not universal, but general, and has been applied to those who are strictly trustees, to assignees, commissioners, and solicitors of bankrupts, executors, administrators, guardians, agents, and officers of the Court, and all others, in whom there is a trust and confidence reposed, which would bring in conflict, the interest of the trustee and the *cestui que trust.*

Exceptions to the foregoing rule have been made in the Courts of Virginia, Kentucky, and of England; but the broad rule now obtains, that all persons sustaining fiduciary relations to persons or property entrusted to their management, cannot hold such property by purchase, if the *cestui que trust,* or those for whom they act, or who are interested in the property, object to their purchase within a reasonable time. The purchase is not void, but voidable.

If a trustee purchase the property entrusted to him, the sale may be set aside by a bill in equity for relief filed by those interested in the property, and the Court will order a re-sale, and if, upon such re-sale, no advance is made upon the sum paid by the trustee, the Court will hold him to the purchase.

A. and B. were administrators, and obtained an order of Court to sell the real estate of the intestate for the payment of debts. A sale was made. A. purchased the estate, and a deed was made by B., but he omitted to recite the order of Court in the deed. A. afterwards sold the premises to C., and C. to D., who entered into possession, and made valuable improvements. The heirs of the intestate commenced an action of ejectment against D. for the land, when C. and D. filed their bill for an injunction, and to compel the administrators to perfect the deed. The bill was demurred to, and the demurrer sustained: *Held,* that the demurrer was not an election to disaffirm the sale, and that an election could not be made by demurrer.

The practice is uniform, and the principle is well settled, that a Court of Equity may, on setting aside a sale where the trustee is the purchaser, and on order-

Thorp *et al. v.* McCullum *et al.*

ing a re-sale, order a reference to the Master to ascertain the purchase money and interest, .the value of the improvements, if any, and also to take an account of the rents. The Court will then decree that these sums be re-imbursed, after deducting the value of the rents, &c. out of the amount of the re-sale; or, if there is no re-sale, then these sums will be ordered to be re-imbursed. A demurrer only raises a question of the legality of the sale, and the sale is valid in equity, as well as at law, unless the *cestui que trust* elect to avoid it; but the demurrer will not show the will of the party to avoid it.

Parties coming to ask the aid of a Court of Equity, must come not only with clean hands, but with the merits of a good or valuable consideration paid, or an offer and readiness to perform all things on their part.

BILL IN CHANCERY for an injunction and specific relief, in the Madison Circuit Court, filed by the plaintiffs in error against the defendants in error. The case was heard before the Hon. James Shields, at the October term 1844, upon a demurrer to the bill and on a motion to dissolve the injunction. The demurrer was sustained, and the injunction dissolved.

*W. Martin,* for the plaintiffs in error:

I. The complainants are entitled to relief on the principle, that Courts of Chancery grant relief when the bill shows an equity in the plaintiffs, though by the rules of the Common Law, they cannot avail themselves of that equity; when to grant the relief is to promote equity and good conscience, and to refuse said relief great injustice will be done. In such a case, relief ought to be granted on principle, in the absence of authority.

II. The land claimed by the plaintiffs in error was purchased in part with the money of Sarah Chilton, from whom defendants claim; to the extent of her interest at least her grantees can hold. That designating said land as belonging to McCullum, as between her grantees and McCullum's heirs, cannot defeat her equity therein; that if the administor's sale to her of the land was void, still, as tenant in dower, she had a legal estate for life in one third of said land, that will enure to the benefit of her grantees.

III. That the heirs of McCullum cannot defeat the title derived through Mrs. McCullum, in an action of ejectment, the sale not being void, but only voidable. This must be done in Chancery, wherein all just allowances are to

be made for the purchase money, and the value of the improvements added by the purchaser. *Haddix's Heirs* v. *Haddix's Admin'rs,* 5 Littell, 203, 204; *Anderson* v. *Fox,* 2 Hen. & Mun. 261, 262; *McKay, Exec'r,* v. *Young,* 4 do. 430; *Doe, &c.* v. *Harvey,* 5 Blackf. 487; *Campbell* v. *Walker,* 5 Vesey, 678; *Whichcote* v. *Lawrence,* 3 do. 750; *Ex parte Hughes,* 6 do. 622; *Davoue* v *Fanning,* 2 Johns. Ch. R. 252.

IV. That a Court of Chancery will aid the defective execution of a power, as prayed for in the bill, when a valuable consideration has passed. *Barr* v. *Hatch,* 1 Ohio Cond. R. 662; 2 Mun. 129.

V. That the Court of Chancery having cognizance of the cause, to enjoin the parties defendants in error from pursuing an inequitable claim, have jurisdiction for all purposes, and may quiet the title of the parties by doing complete justice between them, on issues formed on answers to a cross bill.

*L. Trumbull,* and *J. Gillespie,* for the defendants in error:

The bill is defective and contradictory. It seeks to make valid and effectual the sale of the land in question, as part of the real estate of which John F. McCullum died seized, and at the same time shows, that the land never belonged to the said McCullum, but was entered and paid for after his death by his widow, the said Sarah, out of her own funds, except as to one fourth which was taken from the assets of said estate. If these facts be true, the land in question could not be sold, at all events not more than one fourth interest thereof for the payment of McCullum's debts, and a Court of Equity will not lend its aid to enforce a sale that ought never to have been made.

The administrator and administratrix of McCullum having applied to the Court for a sale of the land in question, as part of the real estate of said McCullum, for the payment of debts, are estopped by their application from setting up that said land was entered and paid for by the said Sarah, administratrix, after her husband's death, and out of her own funds.

The bill shows that one Josiah Wallace entered the land in

question and paid eighty dollars on the same uuder the credit system, and does not show that he has ever parted with his interest. Wallace should, therefore, have been made a party.

All persons legally or beneficially interested in the subject matter of a suit should be made parties. Cooper's Eq. Pl. 34.

In all cases, when a purchase has been made by a trustee on his own account of the estate of his *cestui que trust,* although at public auction, it is in the option of the *cestui que trust* to set aside the sale whether *bona fide* or not. 1 Story's Eq. Jur. 308, 309, 318; Story on Agency, 202; *Davoue* v. *Fanning,* 2 Johns. Ch. R. 252.

The purchase by trustees, &c., is not permitted in any case, however honest the circumstances. *Ex parte* James, 8 Ves. 345.

The doctrine applies to executors and administrators. 1 Story's Eq. Jur. 310; *Conway* v. *Green,* 1 Har. & Johns, 151; *Grider* v. *Payne,* 9 Dana, 190; *Lee* v. *Fox,* 6 Dana, 178.

"The same person cannot be both buyer and seller." *Saltmarsh* v. *Beene,* 4 Porter, 283; *Pierce* v. *Benjamin,* 14 Pick. 359.

There is a distinction, between suits against a trustee to set aside a purchase, or obtain a decree for a specific performance. It seems, in the latter case, the rule applies without qualification that a trustee can never become a purchaser. *Monro* v. *Allaire,* 2 Caines' Cases, 183.

The defect sought to be cured in this case is not only the omission to recite the order of Court in the deed, but if the order were recited, the deed would still be defective, not being executed by both the administrators.

In the case of *Sinclair* v. *Jackson,* 8 Cowen, 583, it is decided, that the powers of trustees, whether express or implied, must be strictly executed; and that the principle applies equally to trusts or powers coupled with an interest, and when the trust or power will survive, as to mere naked authority; and therefore a lease not having been executed by all the trustees living, was held to be absolutely void, and being absolutely void, that it could not be confirmed. *Green* v. *Miller,* 6 Johns. 39; *Bannister* v. *Reed,* decided at the present term.

The deed from Whiteside, administrator, to Sarah, the administratrix, is defective and void, for not setting out the order of Court as required by statute. R. L. 645; *Smith* v. *Hileman*, 1 Scam. 325. And the deed being void, the remedial power of a Court of Equity does not extend so far as to make it valid; "for otherwise Equity would, in effect, defeat the very policy of the legislative enactment." 1 Story's Eq. Jur. 187, § 175; 1 Fonblanque's Eq., top paging 54, note 38.

"Where there is a defect of substance in the execution of a power, such as a want of all the proper parties in the act, there Equity will not aid the defect." 1 Story's Eq. Jur. 187, § 175.

Although the complainants may be entitled to recover the money back which they have paid for the land, still by the agreement of the parties, the decree in this case is to be affirmed, unless the sale can be confirmed; and the complainants are to be left to recover their money back in another suit.

*G. P. Koerner* for the plaintiffs in error :

Two views will be presented.

1. The Court will in equity consider the trust of Whiteside and Sarah, though defectively executed, (if so considered,) as well executed.

2. If the deed for omitting to recite the order of Court, or any other reason, should be considered void, even in equity, the Court can decree that Whiteside and Sarah execute, *nunc pro tunc*, a deed in accordance with the facts, and reciting the said order. As to them and Chilton, who might join *pro forma*, the bill is good under this view of the case. This deed would have to be made from Whiteside and Sarah to Sarah, in her individual capacity.

It is the particular jurisdiction of a Court of Equity, to supply defects in the execution of powers.

Equity will supply a defective execution of a power. *Sinclair* v. *Jackson*, 8 Cowen, 543.

Power partakes of the nature and qualities of trusts, so that if not executed by the party, this Court will, to a certain extent, execute it. *Brown* v. *Higgs*, 8 Vesey, 570.

As far as circumstances will permit, a Court of Equity will supply any defects in the execution of trusts or powers. 1 Fonblanque's Eq. 56, note *.

It will be contended on the other side, that the deed is absolutely void, because,

1.   The order is not set out;

2.   Made by but one administrator;

3.   Made to trustee; and that this amounts to a non-execution of a power.

The decision in Scammon's Reports relied on, does not show that such a deed would be considered void in equity.

It may well be doubted, whether under an order directing "the land to be sold according to law," both administrators must sell or join in the deed.   But if necessary, deeds executed by one only, have been held valid even at law. *Doe* v. *Harvey*, 5 Blackf. 487.

At most it would only be a defective execution of the trust. 1 Fonblanque's Eq. 54, 56, top paging, note.*

The purchase of Sarah, being a trustee, is not *ipso facto* void, but only voidable by the acts of the party, and that not in all cases. *Harrington* v. *Brown*, 5 Pick. 519; *Jenison* v. *Hapgood*, 7 do. 1; *Litchfield* v. *Cudworth*, 15 do. 23.

As to the doctrine that such sales at best are only voidable by the acts of *cestui que trust* and in Chancery, there is no diversity of opinion.   I cite *Whichcote* v. *Lawrence*, 3 Ves. 740; *Campbell* v. *Walker*, 5 do. 678; *Chambers* v. *Goldwin*, 9 do. 256, 261; 2 Johns. Ch. R. 256; *Brackenridge* v. *Holland*, 2 Blackf. 377; 5 Johns. 43; *Munro* v. *Allaire*, 2 Caines' Cases, 183; *Wilson* v. *Troup*, 2 Cowen, 238; *Hawley* v. *Cramer*, 4 Cowen, 718.

In 2 Johns. Ch. R. 256, the rule is laid down very clearly and simply, that the trustee may purchase, but he buys *sub modo*, that is, subject to the equity of the *cestui que trust*.

Executors to whom a power is given to sell, may at law, sell to a trustee for themselves, or may sell to one of them. 2 Williams on Executors, 689; 1 Sugden on Powers, 141.

As far, then, as the Court can now examine into the matter, the deed to Sarah on that account is a good one.

To show that the execution of this deed is at best but a defective one, and cannot be regarded as an utter nullity, I lay down the position, that an execution of a trust or power will be deemed defective, when the act done by the party shows an intention to execute it.   1 Fonblanque's Eq. 238, top paging, and note *h*.

Considering the deed as a nullity, and as a non-execution, still this Court has authority to compel said Whiteside and Sarah to execute this trust, in accordance with the facts, and to set out the order as the law requires, in their deed. This is a trust, and not a power, and this Court can decree specific performance of all trusts, whether they have been executed defectively, or not at all.   8 Vesey, 570.

In conclusion, we contend that the bill shows such a state of facts, that the sale could not be set aside, even in Chancery, on the application of the heirs of McCullum, for we do not admit that the rule, that sales by trustees on the application of *cestui que trust*, in *every* case, is one which is universally recognized.   Where a clear case is made out, that the *cestui que trust* has not suffered, or has perhaps been benefitted, Court would not set aside such sales for no purpose imaginable, but to sustain the sanctity of a rule.   *Whichcote* v. *Lawrence*, 3 Ves. 740 ;   *Campbell* v. *Walker*, 5 do. 678.

But as the *cestui que trust* have not insisted on setting said sale aside, the further discussion of this interesting question may be considered unnecessary.

*J. Hall*, on the same side :

The sustaining of the demurrer to complainant's bill, by the Court below, is the error assigned.   This Court, therefore, is to look into the allegations of the bill, and its recital of facts, and determine, *first*, What equities they establish in the complainants; and, *second*, Are these equities such as will justify a Court of Chancery to interpose in granting the relief prayed for ?

I.   The important facts to be considered are,

1. That the real estate of the intestate was liable, on a deficit of personal assets, to pay the balance due.

2. That there was a deficit of personal assets, and that this real estate was sold in accordance with the provisions of the law applicable in the case.

3. That Sarah Chilton, the widow and administratrix, became purchaser, at a fair price, and that the same was applied in payment of the debts.

4. That on re-sale by her of these lands, the proceeds were applied to the benefit and use of the heirs.

5. That these heirs, during their minority, were clothed, educated and supported by their mother, the said Sarah Chilton.

6. That Sarah Chilton invested her own funds in clearing part of the estate out of the Land Office, and in paying the balance of debts due after the estate was exhausted. This creates to her a just charge against the estate, and her equities, whatever they are, have become the equities of the complainants. The main object of the bill is to aid or supply a defect in complainants' title, arising from the omission of the administrator to recite in his deed the order of sale.

II. Can this Court, in view of the facts of the case, grant this relief?

The effect of this omission is not to make the deed void, but leaves it insufficient at law for establishing a title derived under it. *Smith* v. *Hileman*, 1 Scam. 325.

*Query.* Would the deed be sufficient after having produced the order of sale ?

This is a defective execution of power, to which it is competent for a Court of Equity to relieve against. It is not a non-execution. It is not the case of an omission of a prerequisite of the law. It is not the case of an agreement or contract of sale not executed; but it is a careless neglect to give the purchaser the sufficient legal evidence of the title acquired, whatever that may be. 1 Story's Eq. Jur. 181; *Brown* v. *Higgs*, 8. Vesey; 574; 12 do. 215; 1 Fonblanque's Eq., B. 1, ch. 1, § 7; 2 Peere Williams, 489.

It is objected that one only made the sale, when both ought to have joined. Both are parties to the transaction. The assent of each is the most that was required under any view

Thorp *et al. v.* McCullum *et al.*

of the case. 2 Story's Eq. Jur. 322; 4 Bar. & Har. Dig. 189; 1 do. 489, §§ 20, 21.

This was no personal trust, as in case of power granted to executors. *Clay* v. *Hart*, 7 Dana, 7.

The order of sale stamped the estate with the character of personalty. *Bogert* v. *Hertell*, 4 Hill's (N. Y.) R. 503.

This was an order of sale executed not in virtue of a trust, but by virtue of office; and in law, administrators are but one person.

The rule that Courts of Equity have established, that they will not interfere to grant relief, when under all the circumstances of the case it would be inequitable to other persons, has no application here, since Sarah Chilton, although a trustee for the creditors in making this sale, was not trustee for heirs. An administrator is trustee both to heirs and creditors, *sub modo*. To creditors, in all cases where assets are in hand, faithfully to apply them in payment of debts of the intestate. To heirs, in all cases of personal assets, faithfully to apply the surplus according to the Statute of Distributions. The office is different from that of executor. The one created by law, the other arising under a will, and to be exercised according to its direction and intention. The administrator has no power over real estate, except that given by order of Court under a peculiar statutory enactment. *Bank of Hamilton* v. *Dudley's Lessee*, 2 Peters, 523.

This power is exercised, limited and controlled under and by this law. The administrator, therefore, cannot act in a fiduciary character in reference to real estate, except in so far as power over it is given to him by law. He is trustee to creditors where an order of sale is made, to make the best use of the power granted to effect its purposes. He is trustee to heirs, when an order of sale under the third section of Act cited. He is trustee to heir when part of the real estate is ordered to be sold. R. L., 1827, 200; 4 Kent's Com. 438. He is not trustee, when under the second section all the estate is ordered to be sold, for the Court has adjudged so much necessary, and condemned it for payment of debts alone, and the adjudication of the Court on these points is conclusive.

No interest of the heir in such case put in his hands, and creditors alone could take advantage of purchase. An administrator may buy where no trust exists. Definition of Trust, 2 Story's Eq. Jur. 230, § 964; 1 Peters' Dig. 81, § 36; *Lessee of Grignon* v. *Astor*, 2 Howard's (U. S.) Rep. 319. 3 Peters' Dig. 493, § 33.

But even if in such a case, the administrator is trustee, no equity now remains to the heirs, they having received the benefit of the purchase. This is all Courts of Equity will give. *Whichcote* v. *Lawrence*, 3 Vesey, 740; *Campbell* v. *Walker*, 5 do. 681; *Lister* v. *Lister*, 6 do. 631; *Davoue* v. *Fanning*, 2 Johns. Ch. R. 252; *Brackenridge* v. *Holland*, 2 Blackf. 377.

In all cases where trustee purchases, he is considered as having purchased for benefit of *cestui que trust*. Here *cestui que trust* has had full benefit, and more than a Court of Chancery would give. The relation of administratrix to the heirs rebuts all presumption of fraud. The feeling of natural affection is stronger than interest. This, then, is a case out of the mischief, and therefore out of the meaning of the rule.

An objection further urged against this sale is, that part of the lands were not subject to sale. To this it is replied, that the intestate had an interest at the time of his death in all of the lands, and that they are liable under the express provisions of the statute. Act of 1825, 55, proviso; R. L. 1827, 200, § 1; *Peebles* v. *Watts, adm'r.* 9 Dana, 102; 4 Kent's Com. 438.

It was necessary in this case to bring up the whole matter to give an opportunity for a disaffirmance. The disaffirmance must be of the whole sale or none. *Jenison* v. *Hapgood*, 10 Pick. 111.

Objections have been taken to a consideration of all the equities involved in this case, because of the agreement. This agreement is, that unless the Court is of opinion that the title in complainants can be confirmed, demurrer is to be sustained. This does not mean unless in *all* events the title can be confirmed, but in *any* event. It can be affirmed with assent of heirs. This is to be ascertained only by answer.

Demurrer is no disaffirmance. It only denies that a case for relief has been made. By supplying the defect in deed, complainants can make a defence in ejectment suit, and such deed with the careless omission supplied, must, and will stand till the heirs are willing to do what is equitable on their part. *Jackson* v. *Walsh,* 14 Johns. 407.

The defendants in this case do not stand upon equal equities with complainants. Their demand is unconscionable, and not to be favored by the Court. They are seeking to take advantage of another's error in *lucro captando,* not in *damno evitando,* and the Court, in determining this cause, will adopt the maxim: *Potior debet esse conditio ejus, qui certat de damno evitando, quam ejus qui certat de lucro captando.*

The Opinion of the Court was delivered by

SCATES, J. This was a bill for an injunction and for relief. So much of the history of the case, as will present the question submitted for our consideration is this. John McCullum died seized of certain lands, leaving a widow and three children. The widow and John D. Whitside administered. The personal estate being insufficient to pay the debts, an application was made, and an order of the Circuit Court granted to sell certain lands, including the tract in question. At the sale, Sarah McCullum, the widow and administratrix, was the highest and best bidder, and became the purchaser. John D. Whiteside, the administrator, alone executed a deed to her for the premises, but omitted to recite at large in the deed the order of the Court. Sarah then intermarried with M. Chilton, and they, for á valuable consideration, sold and conveyed the premises to W. Dugger, and he, for a valuable consideration, conveyed to H. B. Thorp, who has had possession and made valuable improvements. The heirs of the intestate commenced an action of ejectment against Thorp for the land. Thorp and Dugger filed this bill to enjoin them at law, and io compel the administrators to perfect the deed made by John D. Whiteside as administrator. The Court below sustained a demurrer to, and dismissed the bill, and this is assigned for error.

It is agreed between the counsel of the parties, that the Court shall decide the case without regard to technical points, and should they be of opinion that the title can be confirmed upon the state of facts in the bill, the judgment is to be reversed, and cause remanded;—if not, the judgment to be affirmed without prejudice, as to the taking an account, &c.

There can be no doubt, but that the Court could allow and compel the administrator to amend the deed, by inserting in the deed, a recital of the order of sale at large, in compliance with the statute under which it was executed. Nor should I stop here. Where the sale had been regularly and fairly made, for a valuable consideration, and the deed executed by one administrator only, I should not permit advantage to be taken of such defective execution of a power, but would compel the co-administrator to join in the execution of the power, and not permit a fair purchaser for a valuable consideration to be defrauded by such an advantage. If it were a mere power, the Court would not; but where there is a duty and a trust to be performed by the proper exercise of the power, as here, the Court will compel it. 8 Vesey, 570-6; 1 Atk. 469. But a question of much graver import is presented. Administrators act in a fiduciary character, in the collection of debts, the sale of property, and settlement of estates. The general principle of equity is, that trustees and others sustaining a fiduciary and confidential relation, cannot deal on their own account with the thing, or the persons, falling within that trust, or relationship. This rule is not universal, but general. Whether Sarah McCullum, the administratrix and purchaser, falls within the general rule as to this sale, is the question before us in this case, brought by purchasers from her, but with legal notice of the defect in the deed, by its being recorded.

The general rule is as I have it laid down, and has been applied to those who are strictly trustees, to assignees, commissioners, and solicitors of bankrupts, executors, administrators, guardians, agents, and officers of the Court, and all others, in whom there is a trust and confidence reposed, which would bring in conflict, the interest of the trustee, and the

*cestui que trust.* This rule is broadly laid down in the following authorities; 1 Vesey, 9; 3 do. 740; 5 do. 682; 6 do. 617, 625, 631; 8 do. 337; 10 do. 385; 12 do. 95; 13 do. 355, 600; 2 Caines' Cases, 183; 5 Johns. 43; 2 Johns. Ch. R. 254; 8 Bro. P. C. 42; 2 Sugden on Vendors, 123; 2 Har. & Johns. 482; 14 Pick. 359; 4 Porter, 283.

Justices Tucker and Roane, in *Anderson and Starke* v. *Fox et al.* 2 Hen & Mun. 261–5, intimated very strongly that this rule did not apply in Virginia to the purchase by an executor, as numerous suits might arise out of it, there being many purchases of the kind made. The point was not, however, decided in that case.

The Court in Kentucky, in *Haddix's Heirs* v. *Haddix's Adm'rs,* 5 Lit. 203, recognized the general rule as applicable to trustees; but following the intimation of the Virginia Court, they distinguished and excepted from it a purchase made by an administratrix, and sustained it. But the broad rule has since been adopted, and applied to executors, and a purchase by one under a power in the will, authorising him to sell, was set aside in *Grider* v. *Paine,* 9 Dana, 190.

These decisions cannot shake a rule so well settled, and so long adhered to and practised, not only in England, but most of the States, whose decisions have fallen within my reach. Indeed it is too sound a rule of policy, although arbitrary and inflexible, and too well supported by reasons deduced from observation and experience, to yield to particular cases of hardship. The temptation of self interest is too powerful and insinuating to be trusted. Man cannot serve two masters; he will forsake the one and cleave to the other. Between two conflicting interests, it is easy to foresee, and all experience has shown, whose interests will be neglected and sacrificed. The temptation to neglect the interest of those thus confided must be removed by taking away the right to hold, however fair the purchase, or full the consideration paid; for it would be impossible, in many cases, to ferret out the secret knowledge of facts and advantages of the purchaser, known to the trustee or others acting in the like character. The best and only safe antidote is in

the extraction of the sting; by denying the right to hold, the temptation and power to do wrong is destroyed. Lord Hardwicke, at one time, excepted from the general rule a fair sale at public auction, and sustained the purchase by the trustee. 1 Cruise's Dig. 498. Again, in *Whelpdale* v. *Cockson,* referred to in *Campbell* v. *Walker,* 5 Vesey, 682, it was held, that where a majority of the *cestui que trusts* agreed, and the sale was fair, that a purchase by a trustee would be sustained. From the language used by Lord Rosslyn, in *Whichcote* v. *Lawrence,* 3 Vesey, 749, another distinction was taken and insisted on, that unless the purchaser had gain and advantage by his purchase, the sale would be sustained. But all these distinctions have been overruled, and the broad rule now obtains, as laid down above, that all persons sustaining fiduciary relations to persons or property entrusted to their management, cannot hold such property by purchase, if the *cestui que trust,* or those for whom they act, or who are interested in the property, object to their purchase, within a reasonable time. 6 Vesey, 625; 8 do. 337; 10 do. 385; 2 Johns. Ch. R. 252; 4 Porter, 283.

But the purchase is not *void,* but only voidable. 14 Pick. 359; 12 Vesey, 354; 2 Sugden on Vendors, 143. It is a rule of disability in the party to hold, when objected to, and questioned by those having an interest, who may have the sale set aside by bill, and a re-sale ordered, if deemed for their advantage. And in doing so, the Courts may, and frequently do order the premises to be put up at the amount of the former purchase, and if no advance upon that sum is made, hold the trustee to his purchase. But the remedy of the party, however, is in a Court of Equity for relief. 2 Williams on Ex'rs, 689; 1 Bingh. 50; 7 Moore, 351. For a Court of Law will treat it as a valid sale, unless there be fraud. 14 Johns. 407.

The *cestui que trust* has, therefore, an election to affirm, or disaffirm the sale. It is insisted, that a demurrer to a bill is not an election. I am of that opinion, that an election cannot be made by demurrer. For the practice is uniform, and the principle is well settled in these cases, that the Court may, on setting aside these sales, and on ordering a re-sale, order

a reference to the Master to ascertain the purchase money and interest, the value of improvements, if any, and also to take an account of the rents. And a decree is always made to re-imburse these sums, after deducting the value of the rents, &c. out of the amount of the re-sale; or if there is no re-sale, then these sums will be ordered to be re-imbursed, and the premises ought to be subject to refund the amount. If a demurrer to the bill for specific performance, or other relief, is an election to disaffirm, the party may ever, by interposing a demurrer, put it out of the power of the Court, to secure the purchaser, by ordering his money to be re-imbursed in the same proceeding by which the sale is set aside. 8 Vesey, 337, and authorities before referred to.

The demurrer only raises a question of the legality of the sale. The sale is valid in equity, as well as at law, unless the *cestui que trust* elect to avoid it. Then a Court of Equity may, and will, avoid it ; a Court of Law cannot. The demurrer will not show the *will* of the party to avoid it. In *Munro* v. *Allaire*, 2 Caines' Cases in error, 183, the widow who was entitled to an interest under a will, sold that interest to the executor. She afterwards sold and conveyed to another. The executor filed a bill against both for a specific performance of his contract of purchase. The Court sustained a demurrer to the bill, but it is observable, in this case that the vendor had expressly elected to disaffirm, in selling and conveying to another, as shown by the bill. So the question may be regarded as open, so far as that case is concerned. In this case, the heirs set forth nothing upon the record, showing whether they wish to avoid the sale or not. However inflexible the rule may be in annulling such sales, when objected to, it has no application, except at the instance, and upon the election of the *cestui que trust*, or others having an interest; for it would never be done at the instance of the purchaser, and against the will of the *cestui que trust*. I am clearly of opinion, that the demurrer ought to have been disallowed, so far as the mere question of the legality of the sale was concerned.

But there is another important view of the case to be con-

sidered. The deed was defective, and would not entitle the purchaser to retain her rights at law, nor those claiming under her, for want of a recital at large of the order of Court granting the sale according to the statute, as settled in the case of *Smith* v. *Hileman*, 1 Scam. 325. There can be no doubt of the power and duty of the Court, in a proper case, to aid the party by ordering a perfect execution of the power, so as to prevent injustice, and secure the rights and interest of a *bona fide* purchaser for a valuable consideration. 2 Mun. 129 ; 3 Ham. 529 ; 1 Russ. & My. 418 ; 8 Vesey, 570 ; 5 Blackf. 587; 3 Edw. 20 ; Fonblanque's Eq. 54 ; 2 Williams' Ex'rs, 689,690; 2 Barb. & Har. Dig. 381, §2; 4 do. 189, §13.

But it is objected here, that a power executed by one of several trustees, is void. And that applies equally to trusts or powers coupled with an interest, and where the trust will survive as to mere naked powers. I know that this doctrine is thus broadly and generally laid down in *St. Clair* v. *Jackson*, 8 Cowen, 543, and correctly enough for the facts of that case, where three executors by name, or the survivors or survivor of them, were empowered to execute a lease, which was executed by two making a power of attorney, the third being alive. Here the parties acted under a limitation, a restricted power. And such facts existed in the two decisions cited from Reports to support it. One was in 14 Johns. 560, where by will the executors, or a major part of them, were empowered to do an act, and which was performed by a sole surviving executor. The other case was in 6 Johns. 39, where a submission was made to five arbitrators, without any provision that a less number might act. In both these cases, the act of the minority was held void. And well enough, because they acted under a restricted power. The other authority cited for this position, I have not been able to see. With this, as a special rule applicable to restricted powers, I concur. But I cannot concur in it, as a general rule, applicable to general powers relating to trusts. The general rule ought to depend upon the nature of the power, and its objects. It is laid down by the Chancellor, in *Brown* v. *Higgs*, 8 Vesey, 570, in these words: "But there are, not only a mere trust,

and a mere power, but there is also known to this Court, a power, which the party, to whom it is given, is entitled and required to execute; and with regard to that species of power, the Court considers it as partaking so much of the nature, and qualities of a trust, that if the person, who has that duty imposed upon him, does not discharge it, the Court will, to a certain extent, discharge the duty in his room and place." See also, 1 Atk. 469. For no trust shall fail in equity for want of a trustee. Executors and administrators have a power, connected with a trust in collecting, selling, and paying debts, and distributing the surplus. If there are no limitations in the will, restricting the persons, or the manner of executing these powers, the Court will aid to give effect to a fair sale or transaction, which cannot take effect otherwise, on account of a defective execution of their powers conferred by law. In attempting to perform these duties, the administrators make a sale of the land, and one only executes the conveyance. Here is a defective conveyance of the power by one, which the law has conferred upon both. But it partakes "so much of the nature and qualities of a trust," that "the Court will, to a certain extent, discharge the duty in his room and place," by compelling the other administrator, in a proper case, to join in the conveyance.

But the bill, in this case, neither avers nor sets out any consideration paid by the administratrix, the purchaser, for this tract of land. Parties coming to ask the aid of a Court of Equity, must come not only with clean hands, but with the merits of a good or valuable consideration paid, or an offer or readiness to perform all things on their part. However liberal, generous and meritorious her conduct may have been towards the heirs, in the general management of the estate, it cannot enter into and constitute a consideration for this land, either good or valuable in law. For want of this averment of consideration paid for the land, or some statement showing it, we are of opinion that the demurrer was properly sustained.

We are further of opinion, that the sale would be voidable at the election of the heirs, even though a full consideration

had been paid. We are also of opinion that a demurrer would not lie to the bill, simply on the ground that an administratrix purchased at her own sale; that a demurrer is not an election to avoid the sale; that a Court of Equity has power to aid such defects in the execution of a power as are pointed out in this case. This opinion is given, without reference to the rights or liabilities of the parties, in any other proceedings, to put the heirs to an election, or for an account.

Judgment affirmed, each party paying their own cost.

YOUNG, J., said: I dissent from the Opinion of the Court, for the reason that the deed from Whiteside, as administrator, to Mrs. McCullum, administratrix, imports such a consideration as should require the defendants to answer the bill, and to oblige the heirs either to affirm or disaffirm the sale.

*Decree affirmed.*