23  219
128  214
128  215
23  219
180  548

# ANDREWS ET AL. *vs.* HOBSON'S ADM'R ET AL.

1. When the defendant in error, who was also defendant below, assigns no cross errors on the record, he cannot be heard to question the action of the Chancellor in overruling his demurrer to the bill.

2. Where a debtor conveys by deed all his property, both real and personal,

to a trustee, in trust that he will, first, make the grantor a reasonable allowance for the comfortable support and maintenance of his family, and the education of his children; secondly, that he will pay all the grantor's debts, and the debts incurred in the execution of the trust; and, thirdly, that he will then convey the legal title to the property undisposed of to the grantor's children; and delivers the deed, as also the possession of the property, to the trustee, who accepts the trust, the trusts in favor of the grantor's creditors and children become perfect, and cannot afterwards be divested or revoked by any act of the grantor or trustee.

3. In such case, a court of equity will enforce the trust, at the instance of the grantor's children; and if the bill allege that the trustee has paid all the debts, the creditors are not necessary parties to the bill.

4. A bill should not be dismissed for the want of proper parties, unless the objection is taken in the court below; but if the objection is there taken, and complainant refuses to amend, his bill may be dismissed without prejudice.

5. Where a trustee purchases at his own sale, the purchase is liable to be set aside, if the *cestuis que trust* make known their dissatisfaction within a reasonable time, and have never ratified or confirmed the sale, after being informed of every fact connected with it in the knowledge of the trustee necessary to enable them to form a correct judgment.

6. Where a father by deed creates a voluntary trust in favor of his children, who are minors, and delivers the deed and the property conveyed by it to the trustee, who accepts the trust, the grantor's ratification of a purchase by the trustee at his own sale does not conclude the beneficiaries.

7. And if the trustee renders an account to the grantor, which is casually examined by his son, one of the beneficiaries, not being at the time aware of his own interest in the trust, this does not render it, as to him, a stated account.

8. A cross bill which sets up matter not pertinent to that of the original bill, and seeks no relief against the complainant, is without equity, and should be dismissed.

Error to the Chancery Court of Greene.

Heard before the Hon. W. W. Mason.

The complainants below, who are also plaintiffs in error, set forth that they are children of Nelson Andrews, and as such beneficiaries in a deed of trust executed by said Nelson Andrews to Matthew Hobson, deceased, as trustee, for the benefit of the creditors of said Nelson Andrews, and then for the use and benefit of complainants. By this deed, (which is exhibited with the bill,) it appears that sundry tracts of land, and a number of slaves, were conveyed to said Hobson on the trusts aforesaid. The bill further charges that Hobson, as such trustee, took possession of the plantation and slaves so conveyed, and continued to possess and use them from the 28th day of March,

1839, until the 1st day January, 1843, when he advertised and sold the whole estate, both real and personal, and became himself the purchaser, at rates greatly below the true value of the property ; and that competition in bidding at said sale was hindered by the conduct of said Hobson, who made the impression on the minds of the persons present, that he was causing the property to be bought in for the benefit of complainants ; that Hobson did not bid for the property himself, but that he procured a gentleman to bid it in, to whom he conveyed after the sale, and who immediately reconveyed to said Hobson ; that no money was paid on such sale.

The bill further charges, that the proceeds of the plantation, during the time Hobson held it as trustee, were amply sufficient to pay off all the debts of Nelson Andrews intended to be secured by the deed, but that Hobson pretends that such was not the case, and that even after the sale of all the trust property, all the debts were not extinguished ; that some of the complainants are infants ; that those who are of full age have in vain endeavored to get Hobson to make a fair and full exposition of the accounts and vouchers connected with his management of the trust estate.

They further allege that the sales made under the trust deed are illegal and fraudulent as to them, and pray that it be set aside, and Hobson and Nelson Andrews be made to account together, and that the balance of the trust estate be decreed to them.

Hobson answers, admitting the making of the deed as it is set out in the bill, and that the land and slaves conveyed by it are also rightly set out ; he further admits that he sold the property as trustee, and that it was bought in by two others for him, and at his request. He insists the sale was fair, and that the property brought its full value ; that the sale was made in pursuance of power vested in him by the deed, and the proceeds arising from it were insufficient to satisfy the debts secured by the deed ; that the crops raised on the lands, when superadded to the proceeds of the sale of the trust property, did not pay the debts, but a balance of about $2,000 remains unprovided for ; that he had paid most of the debts out of his own means, and one object of the sale was to reimburse himself for these advancements. With his answer, he exhibits an acconnt cur-

rent, between himself and Nelson Andrews, in relation to the debts chargeable on the trust estate, and avers that he had read it over to said Andrews, who admitted its correctness, and that the complainant Andrew S. Andrews had seen it, and had it in his possession for about two years, without objecting to any portion of it. He avers that it is a fair and correct accounting, and that the complainants should not be allowed to disturb it. The answer concludes with a general demurrer to the bill.

Nelson Andrews answers, admitting the truth of the allegations of the bill.

There are several amended bills, and two bills of revivor; but the former relate only to the matter of account, and the latter are filed to bring in parties as representatives of those who had died *pendente lite*. These, so far as they are important, are noted in the opinion, as also the cross bill of Nelson Andrews, and the matters arising out of it.

On the hearing in the court below, the Chancellor dismissed both bills, and his decree in this behalf is here assigned for error.

E. W. PECK and S. F. HALE, for plaintiffs in error:

Although a court of chancery might not enforce the specific execution of a voluntary covenant or agreement, made by Nelson Andrews, to create this trust for the benefit of complainants, who are his children; yet, as the trust has been created by him, and fully executed on his part, he having conveyed by deed the legal title to the trustee, and on his part renounced the dominion and control of the same, and the trustee having accepted the trust, and covenanted to execute it, a court of equity will interpose and enforce its execution.—6 Vesey 661; 2 Story's Eq. § 973; 3 Brown's Ch. R. 14, note (A.)

But it is said that the right to sell upon a certain contingency, which is vested in the trustee by the deed, is a power; and although improperly executed by the trustee, that it might be ratified by the donor. There would be some force in this suggestion, if the right to sell conferred on Hobson was a mere naked power; but it is a power coupled with a trust, and that trust is in favor of these complainants and others. Suppose Hobson had refused to execute the power; these complainants could have invoked the aid of a court of equity to compel its exe-

cution, because they are parties in interest.—2 Story's Equity § 1060. But Hobson has executed the power improperly; certainly, then, they are the proper parties to apply to the court to set aside the improper execution, and have it executed properly. Their interest cannot be impaired by the act or omission of Nelson Andrews, who has no interest, and who does not in any way represent them or their rights. All the authorities hold, that such a sale by a trustee will be set aside, not at the election of the grantor in the deed or donor of the power, but at the election of the beneficiaries. To hold otherwise would be to make their rights dependent on the caprice of another, having no interest in common with them.

If a trustee, or person acting for others, sells the trust estate, and becomes himself the purchaser, or interested in the purchase, the *cestuis que trust* are entitled, as of course, to have the sale set aside, and the property re-sold under the direction of the court; and this, whether the sale was made privately or at public auction. However fair and honest the transaction, and however innocent the purchaser in a given case, public policy requires that the sale should be set aside at the election of the *cestuis que trust*, although it was beneficial to them, because, in much the greater number of cases, no court is adequate to the investigation of the truth. The *cestuis que trust* are not bound to prove, nor the court to determine, that the sale was not made in good faith and for a full consideration. The facts may be so, and yet the parties may not be able to show it. The rule is intended, not to remedy an injury, nor to recompense a fraud, but to guard against the hazard of abuse, and prevent the possibility of their commission; to remove the trustee from temptation, and thus secure the rights of the beneficiaries. Hence the trustee is not permitted to change his relations to the trust property by his own act, without the consent of the *cestuis que trust;* but, after a sale and purchase by himself, he will still be considered, by a court of equity, as holding the property subject to all the original trusts. Nor is there any hardship in the rule, because the trust estate will stand as a security to him for any proper advances he may have made.—4 Howard's U. S. R. 552 ; 2 Johns. Ch. 252, 265 ; 1 Hopkins' Ch. 515, 524; White & Tudor's Lead. Cas. in Eq. 125, (65 Law Lib.,) and cases cited in notes ; 1 Story's Eq. § 322; 4 Porter 283 ; 7 Sm. & Mar. 409.

That the trustee is a mortgagee, or otherwise interested in the proceeds of the sale, does not affect the principle above stated.—4 How. *supra;* 3 Sanford's Ch. R. 61; 3 Yerg. 201; 2 Dev. Eq. R. 292; White & Tudor's Leading Cases, *supra.* The case cited by defendants' counsel, from 1 Jac. & W., is not in derogation of this principle, but sustains it.

Where there are infant *cestuis que trust,* as in this case, the trustee can only purchase by leave of a court of chancery.—5 Vesey 682; 13 *ib.* 601; 1 Ball & Beatty 418. And an infant can do no act to confirm the sale.—1 Ball & Beatty 338.

But it is insisted, that the sale has been so far ratified that it cannot now be set aside at the instance of these complainants. We have seen that no act of Nelson Andrews can operate as a ratification of the sale, as against these parties, because he in no way represents their interests, as they have vested rights under the deed independent of him. But the facts do not show a ratification of the sale, even as to him, because the law requires that the act of ratification should be freely done, not under the pressure of want or dependence, as Nelson Andrews was immediately after the sale; that he should know that the transaction was impeachable, and that he should intend at the time, by the act done, to confirm it.—White & Tudor's Lead. Cas., notes on p. 136; 1 Ball & Beatty 338; 2 *ib.* 317. All the facts of this case show, that Nelson Andrews was in a helpless condition, and in the power of Hobson. It appears, too, that he was an illiterate man; and it is not shown that he knew the sale could be impeached, or that he did any act by which he intended to confirm it; but the contrary is to be inferred from the facts in evidence.

But there can be no pretence that these complainants at any time confirmed the sale. The only fact relied on to show a confirmation, is, that the account was at one time seen in the hands of one of them, the only one then of age. Hobson never rendered any account to them, or requested any action on their part; and the first we ever hear of them is their disaffirmance of the transaction, a few months after this account is seen in the hands of Andrew S. Andrews. Even if he had ratified the sale, after full knowledge of all the facts, his ratification could not bind the others, who did not and could not consent to it.—1 Ball & Beatty 338; 10 Ala. 910; 1 Jac. & W., *supra.*

The only departure from the strict rule laid down in England, and also in most of the States, is in the case of sales of personal property by an executor or administrator, having an interest in the property; and even that departure was predicated upon a supposed necessity.—2 Stewart 47; 4 Porter 283; 6 Ala. 894. And in the case of McCartney v. Calhoun, 17 Ala. 303, the court expresses its regret that the rule was ever departed from. In this case, Hobson had no interest in the property, but only an interest in the proceeds of sale; and that interest was voluntarily acquired by him after the creation of the trust.

The cross-bill ought to have been dismissed.—Nelson & Hatch v. Dunn, 15 Ala. 512.

SYD. MOORE and WM. M. MURPHY, *contra:*

The bill is fatally defective on demurrer, first, for want of proper parties. It should have been so framed, that the creditors might come in, and assert their rights. The rule in equity requires that all persons in interest must be made parties.— Story's Equity Pleadings § § 72, 76. It is also bad on demurrer, because it does not aver that the debts of the grantor have all been paid, or that the property is more than sufficient to pay all his debts. Unless this was the case, the complainants had no interest in the property, and could not maintain this suit. This fact, therefore, should have been alleged distinctly and positively, not inferentially. If, however, the allegation had been made, the proof would not sustain it.. The allegations of a bill must be made with reasonable certainty and precision; they must be direct and positive, not uncertain and inconclusive.—3 Ala. 253; 8 *ib.* 767; 16 *ib.* 423; Story's Eq. Pl. § § 242, 251, 255, 261, 403.

The payment of all the grantor's debts, was a condition precedent to complainants' having any interest in the property; and a court of chancery cannot relieve against a condition precedent.— 3 Eden's R. 348; Story's Eq. Pl. 261.

The complainants in this case, as the bill itself shows, are at best mere volunteers, seeking specific relief and performance against the voluntary donor and a purchaser for value. Children claiming under an ante-nuptial settlement, are regarded as purchasers; but children claiming under a post-nuptial settlement, are mere volunteers.—Holloway v. Headington, 8 Simons,

(11 En. Ch. R.;) 1 Craig & Phil. 138, (18 En. Ch. R.) Courts of equity will not enforce a mere gratuitous gift.—1 Story's Equity § § 467, 433 and notes ; 2 *ib.* § § 706, 793 ; 1 Vesey Jr. 50 ; 12 *ib.* 39 ; Edwards v. Jones, 13 Con. En. Ch. R. 377 ; 6 Vesey 656 ; Meek v. Kettlewell, 23 En. Ch. R. 464 ; Pulvertoft v. Kettlewell, 18 Vesey 84 ; Holloway v. Headington, 11 En. Ch. R. 324 ; 4 John's. Ch. R. 498 ; Forward v. Armistead, 12 Ala. 127 ; 1 White & Tudor's Leading Cases 203, 213. Mere voluntary conveyances will not be enforced in equity, even against a subsequent purchaser with notice.—Story's Equity § 426 ; Hill on Trustees 83, 84, 85.

Where an agreement is entered into between two persons, on a valuable consideration passing between them, for the benefit of a third person, from whom no valuable consideration passed, equity will not enforce that agreement at the instance of such third person, because he is a mere volunteer.—Crompton v. Vasser, 19 Ala. 260 ; Collier v. Mulgrave, 21 Keen 81, 98 ; Hill v. Gorman, 1 Beav. 540 ; 1 White & Tudor's Leading Cases (69 Law Library) 212 ; 1 Story's Equity § § 176, 433 ; 18 Vesey 101 ; 1 Johns. Ch. 261. That this trust is executory, see White & Tudor's Leading Cases 38, 39, 42, 43. A voluntary grantee, upon however fair and meritorious ground, is considered in equity as having no equity whatever, against a subsequent purchaser for a valuable consideration with full notice, who will receive the aid of a court of equity to enforce the specific performance of a contract of purchase.—5 Peters' R. 264, 279 : 1 American Leading Cases 61.

As to the validity of the sale : By this deed, Hobson was merely the agent of Nelson Andrews, for the payment of his debts and other things.—Hill on Trustees 83 ; Elmes v. Sutherland, 7 Ala. 262. Andrews has taken no steps to have the sale set aside, but has confirmed it : The power was revocable.—Hill on Trustees, *supra.* It is conceded that, as a general rule, courts of equity will, without inquiring into the fairness of the sale, or the adequacy of consideration, set aside a sale of the trust property made by a trustee to himself, upon the application of the party beneficially interested. The sale, however, is not void, but voidable only, (9 Ala. 961 :) the right is one of election. But there are various exceptions to this general rule, within the influence of some of which the case at bar is sup-

posed to fall. In the first place, no one but the *cestui que trust* can object to the sale, or have it set aside.—14 Johns. R. 407; Lomax on Executors 350·; White & Tudor's Leading Cases 144. In this case, the *cestuis que trust* are Nelson Andrews and his creditors : until all his debts are paid, and there is an ascertained surplus in the trustee's hands, the complainants cannot be deemed *cestuis que trust.*

The *cestuis que trust* may confirm the sale ; and in that case, neither he nor any one claiming under him can afterwards disaffirm it.—12 Vesey 355; White & Tudor's L. C. 136, 144. Sales made by trustees will not be set aside, if there has been a ratification, or affirmance, or acquiescence, or failure to apply to set it aside within a reasonable time.–7 Sm. & Mar. 419. Objections to the sale must be made within a reasonable time ; otherwise, the acquiescence of the *cestuis que trust* will be presumed ; and the circumstances of each case must determine what is a reasonable time.—15 Petersdorf's Abr. 209 ; 4 Cowen 718 ; 7 Sm. & Mar. 409; 2 Story's Equity 1520; 5 Vesey 678; Hill on Trustees 438 ; 5 Ala. 78, 99 ; White & Tudor 144. In the case cited from 7 Sm. & Mar., C J. Sharkey lays down the rule, that the assent of a minor to such sale willl be presumed, unless he takes immediate steps, on coming of age, to have it set aside.

Here, not only did Nelson Andrews ratify and confirm the sale, but also Andrew S. Andrews, one of the complainants, acquiesced in it for several years after he came of age, with full knowledge of all the facts ; and this amounts to a ratification by him. It might be contended, that this could not affect the other children, who are minors ; but in equity, as at law, where parties sue jointly, if one is barred, all are barred.—Hardeman v. Sims, 3 Ala. 747.

It is also held, that a trustee may purchase from a *cestui que trust,* even at private sale, if no unfairness appear.—9 Vesey 235. In some of the courts it is held, that a trustee should apply to a court of chancery for leave to buy at his own sale.—6 Vesey 682 ; 2 Johns. 252. But this rule, which would lead to delay, expense and multiplicity of suits, has never been adopted in this State. Under the circumstances of this case, a court of chancery would have given Hobson leave to purchase at his own sale; and as it was done without such application, equity will

consider that as done which the court itself would have ordered to be done.

In this State, and in some others, another qualification or exception to the general rule has been adopted, viz., that a trustee having a pecuniary and beneficial interest in the property may buy at his own sale, if it is properly conducted.—2 Stewart 47; 4 Porter 283; 6 Ala. 893; 8 ib. 684; 4 Hill's Ch. R. 401; 2 Hen. & Mun. 245; 2 N. H. 218. It is true, executors and administrators are particularly spoken of, but they are recognized by all the courts as trustees.

The trustee in this case having advanced his own money to pay the grantor's debts, to an amount greater than the value of the trust property, became thereby a purchaser of the land, and acquired an absolute right to the trust property, by operation of law.—Willis on Trusts 78; Plowden 185; 1 Ch. Cas. 199; 1 Jac. & W. 64; Toller on Executors 238; Pirtle's Digest 425; 4 Porter 365; 1 Mo. R. 312. Putting the sale out of view, then, Hobson would be considered, both at law and in equity, as a purchaser for value, and entitled to hold the property as his own.

Hobson having furnished an account of his trusteeship to Nelson Andrews, which the latter retained nearly two years without objection, this constitutes a perfect and complete bar to any further accounting.—Langdon v. Roane, 6 Ala. 518; Powell v. Powell, 10 Ala. 900; Phillips v. Belden, 1 Eden's R. 1; 1 Story's Equity § 523; 3 How. Miss. R. 393. This account, having been called for by the bill, is evidence. Its correctness was admitted by Nelson Andrews: it was kept and examined by Andrew S. Andrews. This constitutes it a stated account, admitted by the parties. The attempt made to surcharge and falsify it utterly failed. The complainants are also bound by this as a stated account, though some of them are minors, because Hobson was only bound to account with Nelson Andrews, as they virtually admit; because Nelson Andrews, their father, was their natural guardian, and competent to settle on their behalf; and because the account was submitted to Andrew S. Andrews, then of age, and was by him examined and retained without objection.

This stated account, besides being a bar to any further accounting, shows that the debts paid by the trustee amounted to

more than the entire value of the property ; and, therefore, that nothing is left for the voluntary donation to complainants. The complainants, then, have no right to be heard in this court, and certainly none to any part of this property.

The legal title to the property was vested in Hobson by the deed, and also by the sale until set aside.—2 Cowen 796 ; 7 Johns. Ch. R. 25. And where the equities are equal, he who has the legal title must prevail.—1 Story's Equity § 64. Nelson Andrews' creditors having under this deed a prior and superior equity to the complainants, and Hobson having paid off their debts, he will be substituted to their rights and equities ; and having then a superior equity, as well as the legal title, he must prevail over these complainants.

As to the cross bill, see Hatch v. Dunn, 15 Ala.; Dan. Ch. Pr. 1746 ; Story's Eq. Pl. 399 ; 7 Johns. Chan. 252; Cooper's Eq. Pl. 85 ; 3 J. J. Marsh. 252.

LIGON, J.—1. No question can arise on the action of the Chancellor in overruling the demurrer to the original bill in this case, for the obvious reason that the defendant has assigned no cross errors on the record, and we can only decide on such as are assigned and insisted upon in this court.—Van Eppes v. Smith, 21 A. R. 317.

2. It is urged by the defendant in error, that the bill is so fatally defective, in setting out the cause of action, that no case for relief is made out, and on this ground alone the decree of the Chancellor should be sustained. If this be true, this court will certainly dismiss the bill, regardless of any demurrer, or motion to dismiss for want of equity in the court below.

The complainants set out in their bill, that at the time it was filed they were the only surviving children of Nelson Andrews, one of the defendants, and as such beneficiaries under a certain deed of trust made by him to the defendant Hobson, bearing date the 28th day of March, 1839, a copy of which deed is exhibited with the bill.

This deed conveys to Hobson an absolute title to the land and slaves named in it, and then proceeds, "Now this deed is upon trust, that the said Matthew Hobson shall take possession of all and singular the several parcels of land herein conveyed, and of the negroes herein mentioned, and shall by himself, or by his

agents or attorneys to be chosen by him, and at his discretion, proceed to work the said slaves, and cultivate the said lands, and in all things manage the same in a husband-like manner, and shall have the disposition and management of the crops and products of the same, and from the products and proceeds thereof shall allow to the said Nelson Andrews a reasonable allowance for the comfortable support and maintenance of his family and the education of his children ; and shall proceed to pay off and discharge the debts now contracted of the said Nelson Andrews, with such interest as has or may accrue thereon, and costs, and charges ; he, the said Matthew Hobson, having the authority to compromise, get day of payment, or otherwise arrange and settle the same, to borrow money for the purpose of settling the same, and other things to do as if the same were his own ; and upon this further trust also, that, if the said Matthew Hobson, his executors or administrators, should find the crops insufficient to satisfy said debts, within a reasonable time, either from a failure of the crops, from the multiplicity of the debts, or other cause, or should, in his or their discretion, think it most advisable to make sale of all or part of said land or negroes, or either of them, for the purpose of paying the same, or paying off such liabilities as he may incur in extending or getting time upon any of them, then it shall be lawful, and the said Matthew Hobson is hereby empowered, to proceed and sell any and such portion as he shall deem proper, upon giving thirty days notice in three or more public places in Greene County, at auction in the town of Greensboro, to the highest bidder, either for cash, or on a credit, as shall seem to him most proper ; and, upon such sale or sales, (should more than one take place,) shall make the purchaser or purchasers good and sufficient deed or deeds to such of said lands as may be sold, conveying them in fee simple, and shall also make sufficient conveyances of such of said negroes as shall be sold, and shall apply the proceeds of such sale or sales as hereinbefore specified. *And this deed is upon the further trust also,* that so soon as the said Matthew Hobson, his executors and administrators, shall have paid off all the debts now existing of the said Nelson Andrews, and discharged all the liabilities of the said Andrews, or of himself, or of themselves, contracted under or by virtue of the trust now taken upon him, the said Hobson, he, the said Hobson, his executors and admin-

istrators, shall convey to the children, then living, of the said Nelson Andrews, all the lands herein conveyed, then remaining unsold, and all the negroes herein mentioned, and then alive and unsold, and their increase, to be held by them as their sole and absolute property, subject only to the following condition and trust : that the said negroes and land so conveyed to them, shall, during the lives of the said Nelson Andrews and his wife, Polly Andrews, and the life of the survivor of them, be subject to the maintenance of the said Nelson Andrews and the said Polly Andrews, or the survivor of them, and the proceeds thereof, so far as the same shall be necessary, shall be so appropriated, and the said Matthew Hobson, his executors or administrators, is and are hereby directed to convey the same in trust accordingly. And the said Matthew Hobson doth assent to the trust hereby created, and accept of the same, and bind himself to the faithful execution of the same."

This deed is executed by Nelson Andrews and Hobson ; it was acknowledged by them before a notary public, and duly recorded in the office of the clerk of the County Court of Greene County.

By its terms, the property, both real and personal, is "granted, bargained, sold and conveyed" by Nelson Andrews to Matthew Hobson, upon the trusts above mentioned, and it is alleged in the bill that Hobson went into immediate possession of the property, and continued to possess and manage it by himself and his agents, until the sales in the year 1843.

It is clear that Nelson Andrews, by the terms of this deed, and the delivery of the possession of the property to Hobson, divested himself of all legal estate in it, and could not have revoked it, had he desired to do so. The title vested in Hobson, on the delivery of the deed, so that the trust in favor of the creditors and children of Andrews is vested, and it could not be afterwards divested by any act of Nelson Andrews alone, nor by any concurrent act of Andrews and Hobson, for the reason that the former had parted with all control over it whatever, and the latter had received it subject to the specific trusts of the deed under which he holds it. To allow either, or both of them, to use the property for any other purpose than those set forth in the deed itself would be a fraud upon the rights of the beneficiaries; and although the deed, so far as it relates to the complainants, is to a certain extent voluntary, yet, after it was delivered, it

could not be revoked by the grantor, nor will it be tolerated that the trustee, who covenants to hold for them, shall cast off his trust, and set up this fact against their title.—2 Story's Eq. § 973 and notes 3 and 4.

It is insisted, however, that, although the deed vests Hobson with the legal estate, and defines the trusts in subjection to which he holds it, yet, as no *valuable* consideration passed from the *complainants* to the grantor, the trust in their favor will not, at their instance, be enforced by a court of equity; that persons standing in this relation are mere volunteers, and will not be allowed to set up their claims against the voluntary donor, or a purchaser for value.

That a *cestui que trust*, who has paid no valuable consideration to the grantor, can enforce the execution of the trust in a court of equity against the *trustee*, has already been decided by this court, on very full consideration, in the case of Sledge's Adm'rs v. Clopton, 6 A. R. 598; and that he will be allowed to do so against the grantor, and a purchaser for valuable consideration with notice of the trust, has also been decided in the case of Eldridge *et al.* v. Turner *et al.*, 11 A. R. 1049. With these decisions we are entirely satisfied; for it is the peculiar province of a court of chancery to protect the interest of beneficiaries, who, having no legal, yet a good and complete claim in equity, cannot sue at law. If no relief in chancery remained to them, a fraudulent grantor and tustee might appropriate the trust estate to their own use, and thus defeat the ends of justice with impunity.

But it is said that the necessary parties complainant are not made by this bill; that the creditors of Nelson Andrews are indispensable, and as they are not brought in, the bill should be dismissed. Under the form of this bill, we do not think the creditors, if any there be, necessary parties complainant. It is, in effect, alleged that the debts are all paid; and if this be so, they have now no interest under the deed, and the sole remaining trust in the property is that in favor of the complainants, and in this aspect their bill is framed.

Again: no bill should be dismissed for want of proper parties complainant, unless the objection is taken in the court below; and on suggestion of the names of the parties that are improperly omitted, if, after this, the complainant refuses to join

them by an amendment of his bill, the court may dismiss it without prejudice, but not absolutely.

It is contended, however, that, as Hobson was empowered by the deed to convey the legal estate in the trust property to the complainants, on the happening of a certain contingency, it shows that something remained to be done before the trust became complete in the complainants; that the deed of Nelson Andrews to Hobson is a mere power, and consequently revocable at the will of the grantor. It is further urged that, as the grantor assented to the sale of the trust property, such assent amounted to a revocation of the power. An examination of the deed, and the trusts created by it, will readily show the fallacy of the first part of this argument, and establish, beyond controversy, that the *trust exists*, independent of the power to Hobson to convey *the legal* estate to the complainants, and that this power is coupled with the trust. Consequently it is irrevocable, and a court of equity will compel the execution of the power.—2 Story Eq. § 1061, and authorities there cited in notes 1 and 2.

The trusts of the deed are as follows :

1. The trustee is to " allow the said Nelson Andrews a reasonable allowance for the comfortable support and maintenance of his family and the education of his children," so long as the property remains unsold.

2. He is to pay the expenses of keeping up the plantation, with all debts created for this purpose by himself or agent, and the debts of Nelson Andrews existing at the date of the deed.

3. When these trusts are executed, he is to convey whatever remains of the property to the children of Nelson Andrews, to be held by them " as their sole and absolute property," subject to the trust, that Nelson Andrews and his wife shall be supported during their joint lives, and the life of the survivor of them, from the proceeds of the property so conveyed to their children.

How far this deed would have been upheld against a pre-existing creditor of Nelson Andrews, who would not accept the provision made in it for his benefit, we need not determine, as the question presented for our adjudication does not arise between such creditor and the grantor, or one claiming under him, but is between the trustee and the *cestui que trust*. The rights of the two are essentially distinct, and are governed by entirely different rules. Between the trustee and the beneficiary, the

27

deed must regulate their rights, and the former will not be permitted to deny the right of the latter, but he may show that he has parted with, or forfeited it, in such a manner as to deprive himself of the privilege of calling upon the trustee to account concerning it.

Had Nelson Andrews executed a voluntary deed, by which he covenanted with Hobson, or any other person, that at some future time he would convey to him property in trust for his children, this would not amount to the creation of a trust, and, being without consideration, would not authorize a court of equity to interfere in behalf of those in whose favor he promises to create such trust, in order to compel him to do so ; for, in such case, he would have the right to disaffirm his agreement, and the *locus penitentiæ* remains to him until the deed creating the trust is made. But we apprehend the rule would be very different, if, in pursuance of such an agreement, he were to execute a deed to the trustee, investing him with the legal title to the property, and declaring the trusts which he engrafts upon it, defining them with certainty, and appointing a time when the trust shall cease, and the beneficiary receive the legal estate. A direction in such a deed, pointing out the terms and manner in which the trustee shall convey the *legal estate* to the beneficiary, cannot affect the trust created by it; neither can it be construed to the prejudice of the rights of the beneficiary, nor be appealed to for the purpose of showing that the trust is incomplete until the deed required to be executed by the trustee to the *cestui que trust* is made. Such a construction would wholly pervert the meaning of the instrument, and render that necessary to the *creation of the trust*, which is only required by the parties to be done in order *to terminate it and invest the beneficiary with the legal estate*.

The trust in this case was perfect the moment the deed was executed ; and the value of the property, and not the nature of the interest of the children, is rendered contingent, on account of the preference given to creditors by the deed. Their *right* to the property, if any remained in the hands of the trustee after the debts were paid, was as complete in equity before the payment of one dollar of the debts, as it could become after all the debts were paid. The only difference is this : they could not call on the trustee to convey to them *the legal estate* in

the property *before* the debts were paid, while the deed gives them this right after such payment is made.

2. The bill seeks to set aside a sale made by the trustee of all the property mentioned in the deed, at which he became the sole purchaser, and the question is, should this be done under the circumstances of the present case ?

It is insisted in favor of the validity of the sale, that the trustee had advanced his own funds in payment of the debts of the maker of the deed of trust, (which were secured by its provisions,) until nearly or quite all the debts had been paid by these advancements and the proceeds of the crops raised on the plantation, and that under these circumstances the trust of Hobson was coupled with an interest in the subject matter of that trust, and therefore he had a right to purchase at his own sale.

It is conceded by the defendant in error, that sales of trust property, at which the trustee becomes the purchaser, will ordinarily be set aside at the instance of the *cestui que trust*. But as some exceptions have been engrafted upon this general rule by this court and a few others, it is supposed this case comes within those exceptions; and even if it does not, the sale here has been ratified by Nelson Andrews, the grantor in the deed, and acquiesced in by the complainants for so great a length of time, that it must be treated as valid, and cannot now be disturbed. The rule laid down by Lord Alvanley, in Campbell v. Walker, 5 Ves. Jr. 680, we apprehend to be the true one, in cases of sales by trustees, at which they become the purchasers. It is this : " that a trustee, purchasing the trust property, is liable to have the purchase set aside, if, in any reasonable length of time thereafter, the *cestui que trust* makes known his dissatisfaction." This rule has been invariably acted upon in the English courts, so far as we have been enabled to see, with the solitary exception of the case of Whicheste v. Lawrence, 3 Ves. Jr. 750, in which Lord Rosslyn held, that such a sale was good, unless it was shown that the trustee gained some advantage by the purchase. This case was never followed, but is overruled by Lord Eldon, in the cases of *Ex parte* James, 8 Ves. Jr. 345, and *Ex parte* Bennett, 10 *ib*. 381; and by Lord Alvanley, in the case of Campbell v. Walker, *supra*.

Our own court has departed from it in the case of executors and administrators, who have an interest in the estate which

they represent, in the cases of Brannon v. Oliver, 2 Stew. 47, and McLane v. Spence, 6 Ala. 897; holding that these may purchase, subject to have the sale set aside for unfairness or fraud. While we do not feel at liberty to depart from these decisions at this late day, we confess that the reasons upon which they are placed by the court that made them have failed to convince us that the departure is proper.

In the case of Saltmarsh v. Beane, 4 Por. 283, the court refused to apply the principles settled in the case of Brannon v. Oliver, taking a distinction between executors and administrators and other trustees; and intimating very pointedly, that the decision in Brannon v. Oliver must be confined alone to cases of sales made by executors and administrators, inasmuch as the peculiar reasons on which it is based are inapplicable to any other class of trusts. We are willing to let it rest at that point, but wholly averse to extending it, or multiplying exceptions to a general rule so salutary as that which prevails in the English courts, and which tends so strongly to guard the trustee from those temptations to unfairness and fraud to which the adoption of a contrary one would expose him.—14 Ala. 149.

We are of opinion, therefore, that the purchase by Hobson, the trustee, cannot stand, if it is shown that the complainants are dissatisfied with it, and have made known that dissatisfaction within a reasonable time, and that they have never ratified and confirmed it, after being fully informed of every fact connected with it, of which the trustee himself was possessed at the time of such ratification, necessary to enable them to form a correct judgment.

It is contended that the sale was consented to and fully ratified by Nelson Andrews, and that Andrew S. Andrews, who was of full age when it took place, and who saw the account current which was rendered by Hobson to Nelson Andrews, never expressed any dissatisfaction until a short time before the filing of the bill in 1848. As to the other complainants, they were then infants, and had no power to affirm it.

The consent of and ratification by Nelson Andrews are wholly immaterial, so far as the rights of the complainants are concerned, even if they are shown to exist. He has parted with all title in the *corpus* of the trust property, and has only reserved to himself an interest in so much of the profits, arising from the

use of the lands and slaves, as will support himself and wife during their lives, and the life of the survivor. He cannot, on this account, be allowed to conclude these defendants by any act of his.

The fact that Nelson Andrews is the natural guardian of his children does not, as the defendant's counsel supposes, give him any greater power in this respect. No guardian has the power to divest the title of his ward to property in which he is legally or equitably interested, unless it be done under the sanction of the court to which he is amenable; and, as he has no such power himself, he will not be allowed, by his consent, to give validity to the act of another, irregularly and illegally done, which will have that tendency.

There is no evidence which shows affirmatively that Andrew S. Andrews, the only one of the complainants who had attained his majority at the time of the sale, ever distinctly ratified the sale made by Hobson. His assent, it is said, must be presumed from the fact that he saw the account current which was made out and handed to his father by the trustee. It does not appear that Hobson ever gave him full and complete information concerning the affairs of the trust estate, or, indeed, that he imparted anything to him concerning it, as one who was interested in it. All direct communication between him and the family of Nelson Andrews, upon this subject, seems to have been confined to Nelson Andrews alone. Under these circumstances, the time which elapsed between the sale and the filing of the bill is not unreasonably long to enable Andrew S. Andrews to ascertain the facts necessary to prepare him to act understandingly in the assertion of his rights.—Roche v. O'Brien, 1 Ball & Beatty 338. From all that is found in this record, it does not appear that Andrew S. Andrews ever examined the account rendered to his father, for any other purpose than that of informing the latter of what it contained; and this was rendered necessary by the fact that his father was illiterate and could not read it for himself. It seems to have been treated by all parties, at that time, as an affair in which Nelson Andrews and Hobson were the only parties interested, and doubtless such was then the opinion of all who were concerned in it. It is evident, from the answer of Hobson to the original bill, that he did not regard the complainants in this suit as parties to whom he was bound to account,

or who were entitled to any disclosures from him; and under these circumstances, it would be a very rash presumption to suppose that he did, in fact, render the one, or make the other.

The decree of the Chancellor dismissing the original bill is, therefore, erroneous, and must be reversed.

As the case must go back for an account; it may be as well to lay down a few general principles, which must govern the master in taking it.

The facts shown by the answer and proof are not sufficient to give to the account rendered by the trustee to Nelson Andrews the dignity of a stated account, as against these complainants, although, as to Nelson Andrews, such would be its character. It was not rendered to Andrew S. Andrews, as an account to which he was in anywise a party, nor does his attention appear to have been called to it in that aspect at all. It would be highly unjust to apply to him the rule, which governs in cases where accounts are rendered to the party who has made them with a view, not only to their inspection, but their settlement also. In such cases it is both just and right to charge the debtor with their payment, if he retain them for a long time, without objecting to them, unless he can surcharge and falsify them. It is right, in such cases, to throw the *onus* of showing errors in the account on the party who thus retains it.—Langdon v. Roane's Adm'r, 6 A. R. 518; 10 A. R. 900. But it will not do to apply this rule to cases in which the accounts between an illiterate father and his creditor casually fall into the hands of the son, who examines them solely with the view of informing his father of their contents, and without being aware, at the time, that his own interests are involved in their accuracy.

It is clear, that such of the complainants as were infants at the time the account was rendered, are not bound by it.—Powell v. Powell, 10 A. R. 900.

As the defendant took no title to the land and slaves by his purchase at his own sale, they must still be regarded subject to the trusts of the deed under which he took possession of them, and the account in the court below must be taken in reference to these trusts.

Hobson's representative, on such accounting, must, as to pay-

ment, stand in the place of the creditors, whose demands his intestate has paid, and be accounted with as such.

We deem it unnecessary to give more specific instructions in this respect, and leave it with the Chancellor to add such others as will guide the master to correct results. We will only add, that there is nothing in the whole case which tends, in the slightest degree, to raise a presumption of unfairness or fraud on the part of the trustee; the errror into which he fell, and for which the sale is here set aside, is solely a mistake of his powers and his rights.

In relation to the cross bill of Nelson Andrews, it need only be said, that much the larger portion of the charges and allegations which it contains have no connection whatever with the matters involved in the original suit. It sets out a partnership between said Andrews and his co-defendant, Hobson, in stock raising, with which the complainants in the original bill have nothing to do, and which is entirely unconnected with the trust. It also sets out, that Hobson sold three negro slaves belonging to Nelson Andrews, which were not included in the deed of trust under which the complainants claim, and consequently, in which they have no interest; with many other matters, wholly foreign from any legitimate defence which could be made to the original bill, and which concern Nelson Andrews and Hobson alone.

It is well established, that a cross bill is a mode of defence to the original bill, and its matter must be pertinent to that suit.— Danl. Ch. Prac. 1742; Nelson & Hatch v. Dunn, 15 A. R. 501.

On this cross bill no relief is sought against the complainants in the original bill, nor would its allegations justify the court in granting any. Under these circumstances, it cannot be allowed to stand as a cross bill, and was properly dismissed by the Chancellor. His decree, in this respect, is consequently affirmed.

A decree must be here rendered against Nelson Andrews for the costs on the cross bill in this court and the court below; and on the original bill, against the administrator of Hobson for the costs of this court only, leaving the costs of the court below to be hereafter disposed of by the Chancellor, as to him shall appear right.