SALTMARSH VS BEENE.

*Question as to a purchase of property by a trustee ; and as to agreements thereto.*

1. A trustee employed or appointed to sell an estate, can not, either directly or indirectly, effect a purchase of the property sold, for himself.
2. Thus, where one, being appointed a commissioner by the Orphans' Court, to sell real estate, entered into an agreement with another, whereby the estate should be purchased by the latter, and afterwards divided,—on refusal of the buyer to convey, Chancery refused to enforce the agreement.

In error to the Circuit Court of Dallas, on a decree of the Chancery side of that Court.

In this case Allanson Saltmarsh exhibited a bill in Chancery, against Jesse Beene; which set forth that, on or about the first day of February A. D. eighteen-hundred and thirty, orator agreed with defendant, in writing, that defendant, for the mutual benefit of the parties, should purchase a certain tract of land, known as the S. E. quarter of section of thirty-five,

township sixteen, range nine; that, in pursuance of said agreement, on the said first day of February, aforesaid, at a sale by auction, had under due course of law, for the benefit of the heirs of Thomas Ewing, the said defendant bid off the aforesaid land.— That subsequently, orator and defendant executed a joint note, for the price of the lands, and titles were made to defendant; that by said agreement, orator was to receive possession of the west half of said quarter section, and defendant the east half thereof. That, when an adjustment had been made, in relation to the relative value of the two tracts, defendant refused to make the title agreed upon, until orator should agree to a reservation in the deed, of a road, which defendant insisted should be granted upon the lands allotted, under the agreement to orator, and which he insisted should be inserted in the deed. The bill, therefore, prayed an enforcement of the agreement.

This was the agreement referred to in the bill.

" A. Saltmarsh and J. Beene agree to buy the S. E. quarter of section thirty-five, township sixteen, range nine, at S. B. Ewing's sale this day, to be made, and when purchased, they are to divide the same, allowing Beene the east half of said quarter, at a price according to its relative value, when compared with the west half of the same quarter— the purchase price to govern; and A. Saltmarsh to pay as much more as his half is worth more than Beene's. 1st February, 1830.

"A. SALTMARSH.

"J. BEENE."

A supplemental bill filed in the cause, shewed, that Beene had commenced an action at law against orator for a trespass on the lands, and prayed an injunction : which was granted.

The answer of Beene admitted signing the writing, but contended it was not delivered to complainant. It set forth, further, that complainant, with others, had been appointed by the judge of the Orphans' Court, commissioner to effect a sale of the lands in question—which were part of the real estate of Thomas Ewing : that Saltmarsh was offered and received as his surety ; and that he had discharged the note himself.—That long previous to the said purchase, defendant had wished to purchase the whole of the lands aforesaid, for a healthy residence for his family.—That, with a view to the improvement of his portion of the land, he retained the privilege, verbally, at the time of signing the said agreement, of opening a road along the dividing line between the east and west halves of said quarter section of land—that, to this complainant assented.— That, after the sale, respondent proceeded to draw a conveyance, reserving the road aforesaid, which he proposed to execute to complainant ; but, that complainant refused to accept it, on account of the reservation of said road. The answer then insisted on being discharged from any obligation to convey : and averred want of consideration, estoppel of complainant from his deed as commissioner, &c.

After testimony taken in the cause, not necessary here to be inserted, the cause came on for hearing, and the Chancellor dismissed the bill, at the costs of complainant, and he took a writ of error.

*Peck*, for the plaintiff in error.
*Clark*, contra.

It was said, for the plaintiff in error—

First.—Is the agreement of the first of February, eighteen hundred and thirty, a sufficient contract to bind the parties? A contract is the mutual assent of two or more persons, competent to contract, founded on a sufficient or legal motive, inducement or consideration, to perform some legal act, &c.—Chit. on Con. 2, 3.

It will not be objected, I presume, that the parties were not competent to contract; nor that they did not, in fact, contract. The question then arises—was there a sufficient legal motive or consideration? In the first place, I insist, that the mutual undertaking to purchase and divide, exhibits both a legal motive, and a sufficient consideration.—Chit. on Contracts, 16.

Chancellor Kent says, "A mutual promise amounts to a sufficient consideration, provided the mutual promises be concurrent in point of time, and in that case, the one promise is a good consideration for the other."—2 Kent's Com. 365.

This agreement is signed by both the parties, evidently shewing that they considered it as imposing mutual obligations. The promises are reciprocal, and agree in point of time. 1st. The parties agree to purchase a certain piece of land together: 2d. When purchased, they agree to divide the same: 3d. In this division it is agreed that the complainant shall have the West, and the respondent the East half thereof; and, inasmuch as the complainant's part

was esteemed to be more valuable than the respondent's, it is further agreed, that this difference in value shall be adjusted between them, having reference to the purchase price, as the criterion or rule, by which such adjustment was to be made, &c.

In this agreement, therefore, it is believed, is embraced all the necessary constituent parts of a perfect contract.—Roberts on Frauds, p. 117, note 58, and the cases there cited.

Secondly—The agreement in this case has been partly performed—the purchase was made. The parties divided the land, run out and marked the division line. The complainant was let into the possession—enjoyed that possession for several years, and made valuable improvements, and the relative value of the two parts was settled and adjusted between the parties. These acts of part performance, even had the contract not been in writing, would have taken it out of the statute of frauds, and entitled the complainant to a specific performance.—Roberts on Frauds, 137 to 140.

The complainant has complied, or rather has offered to comply with the agreement, in all things, on his part. The tender charged in the bill is fully proved by the testimony of both Paul and Perry.

Thirdly.—Let us now inquire, whether any substantial objection can be urged to the execution of this agreement, on the ground that it was made in violation of some rule of law; or is contrary to public policy.

1. The respondent, in substance insists, that, in as much as the complainant was one of the commissioners, he could not, therefore, become either direct-

ly or indirectly, a purchaser at his own sale. This Court, however, has not objected to such pur a s, unless evidence of fraud or unfairness appears.— *Gayle et al. vs Singleton*, 1 Stewart, 567; *Brannan et al. vs Oliver*, 2 Stewart, 47, and the cases there cited; 1 Dess. 153. In the case of *Jackson vs Woolsey*, 11 Johns. Rep. 456, 508, mar. the validity of a purchase by a guardian *ad litem*, at a sale by commissioners, pursuant to an order of Court, came in question. It was objected, that a purchase by the guardian was illegal and void, but the Court said, "The guardian having purchased the premises, does not affect the proceedings; nor can they, on that account, be deemed fraudulent. It was a public sale to the highest bidder, authorised by statute, and under the sanction and inspection of a Court. Without circumstances of direct fraud, therefore, to support such an allegation, the deed is valid in law."

Guardians exercise a peculiarly delicate and important trust—they act for those who, from their minority, are supposed to want that judgment and discretion necessary to protect their own rights. Yet, even they, under certain circumstances are permitted to purchase their wards' estate.

The English rule, which declares that a sale, when the trustee to sell is the purchaser, is, as it regards the *cestui que trust*, *ipso jure*, void, has not been adhered to strictly, in this country. The cases referred to by the Court, in the case of *Brannan et al. vs Oliver*, shew, that the highest American tribunals have, in many instances, found it necessary to depart from the strictness of this rule. At any rate, this can not be made an available objection, nor do

we any where find it so, in a contest between third persons.—5 Johns. R. 43; *Jackson vs VanDalfsen*, and note, (*a*) 48. On an application by the *cestui que trust* the Chancellor will set aside the sale. This shews that such a sale is not void, but voidable, only, at the instance of the party supposed to be injured. ⚓ *Davoue vs Fanning et al.* 2 Johns. Ch. Rep. 252; *Gallatin vs Cunningham*, 8 Cowen, 361, 370, 376, 77, 78.

2. Another objection, which will probably be raised, is, that the agreement is in fraud of auction sales, and therefore void in consideration of public policy. I readily admit, that an agreement to prevent, or put down competition at a public auction, would be contrary to morality and sound policy, and should not be enforced; but this is not such an agreement. The object was not to prevent, nor indeed did it prevent, competition. ✕ Here was a quarter section of land to be sold, in one piece. The complainant wanted one half, and the respondent wanted the other, and neither wanted the whole.— The manifest tendency of this agreement, therefore, was to enhance the price at the sale: for, without this agreement, it may fairly be presumed, neither would have been willing to bid a fair price for the whole tract. No certain amount was fixed beyond which they would not bid.

This agreement does not fall within the principle decided in the case of *Carrington vs Caller*, 2 Stewart, 175. There the avowed object of the agreement was an association for the purpose of putting down competition at a public sale. Nor do the cases there cited oppose the correctness of this agreement. Furthermore, ought the respondent be permitted to take

shelter under this principle to avoid the execution of this agreement, after the complainant has been let into possession, and with the respondent's permission, made valuable improvements?

COLLIER, J.—This cause comes up by appeal from the Equity side of the Circuit Court of Dallas County.

From the record we learn that the plaintiff here, together with two other individuals, were appointed commissioners, by the judge of the County Court of that County, to sell at public auction the real estate of Thomas Ewing, deceased. That both the plaintiff and defendant being desirous to purchase, the one the west and the other the east half of a quarter section of land, belonging to the estate, on the day of, and immediately preceding the sale they agreed in writing to purchase the quarter section, and divide it by assigning each to the other, the part respectively stipulated for in their agreement. At the commissioners' sale, Beene became the purchaser, complied with the terms of sale, and received a deed, executed by all the commissioners. Afterwards, being called upon to execute his contract, by making a deed for the west half, to the plaintiff, he refused to do so, but with a reservation of a right of way through the same. The plaintiff declining to yield to this requisition, the defendant brought an action at law, to eject him from the possession, which he had before acquired. And thereupon the plaintiff filed his bill to enjoin a trial at law, and to compel the defendant to perform his contract by executing a deed.

The argument of this cause has taken a wide

SALTMARSH *vs* BEENE.

range, and many questions have been discussed, the consideration of which is rendered unnecessary by the view we shall take of it. The first question which naturally presents itself, is this — has the plaintiff acquired a right, by his contract with the defendant, which a Court of equity will regard and protect? This must depend upon his right to purchase at the commissioners' sale. By the civil law, the same person cannot be both buyer and seller; "because, if he were permitted to be the purchaser, his duty and his interest would stand in direct opposition: for, as the representative of the owner, it would be his duty to bargain for the highest price, while, as purchaser, it would be his interest to give the lowest." For these reasons, and to guard against frauds, which, in many instances would be beyond human detection, that law inhibited purchases by persons thus circumstanced.

This rule of the civil law is practised upon in our Courts of Equity, and applied to trustees, agents, and generally to all persons who have been employed in a confidential character in relation to property. *Whichcote vs Lawrence;*[\*] *Campbell vs Walker;*[†] *Lister vs Lister;*[‡] *Green vs Winter;*[§] *Crow vs Ballard;*[∥] *Lord Hardwick vs Vernon;*[¶] *Ex parte Reynolds;*[\*\*] *Ex parte Lacey;*[††] *Owen vs Foulkes;*[‡‡] *Ex parte James;*[§§] *Parkist vs Alexander.*[∥∥]

And it is immaterial, whether the sale be made privately or at public auction, the reason of the rule is as strong in the one case as the other; though the chances for detection would be more favorable in the latter, than the former, if any unfairness were

[\*] 3 Ves. jr. 740.
[†] 5 Ves. jr. 678.
[‡] 6 ib. 631.
[§] 1 John.Ch Rep. 27.
[∥] 3 Bro.C.C 117.
[¶] 4 Ves. jr. 411.
[\*\*] 5 ib. 707
[††] 6 ib. 625
[‡‡] ib. 630 n
[§§] 8 ib. 337
[∥∥] 1 Johns. Ch. R. 394

Vide also, 1 Story's Equity, 317, 18, and 19, and the cases there collected.

practiced by the purchaser. See the case of the *York Buildings Company vs M'Kenzie.* Nor does it make any difference though there be a plurality of trustees.—A sale by one trustee to his co-trustee, is illegal.—*Ringold et al. vs Ringold et al.*† Each owes to his situation the same duty that all do, and is, therefore not permitted to do any act which may tempt him from its honest performance, or give him an interest adverse to his constituent.

It is a well established rule of law, that a man can not do, indirectly, *that* which it is unlawful to do, directly. If, then, the plaintiff could not have purchased at the commissioners' sale, (of which we have no doubt,) it was certainly incompetent for him to have purchased through the agency of the defendant. Such a purchase is obnoxious to every objection that could be urged against a purchase by the plaintiff, directly, with a force increased, by the *increased* difficulty of detecting any unfairness in the sale. While a trustee is restrained from purchasing at a sale made by himself, in that character, either personally, or through the intervention of an agent, he can not, at such sale, become the agent of a purchaser.‡ *Ex parte Bennett.*§

The doctrine as to purchases by agents or persons exercising a confidential character, is founded rather upon general principles, than upon a state of facts as applicable to any particular case. In *ex parte James,*‖ it was decided that the purchase was not permitted in any case, however honest the circumstances; the general interests of justice requiring it to be destroyed in every instance—no Court being equal to the investigation and ascertainment of

*8Bro Parl Ca. 42, T. Ed.

†1 Har. & Gill, 11.

‡1 Liv. on Agen. 425 §10 Ves.jr 381.

‖8 Ves.jr. 345.

the truth in much the greater number of cases. Lord *Rosslyn* was of an opinion, that to authorise the sale to be set aside, it should be shewn that the agent or trustee had gained an advantage by the purchase— *Whichcote* vs. *Lawrence.** But the correctness of Lord Rosslyn's opinion is denied by Lord Eldon, in the cases of *ex parte James* and *ex parte Bennett,* already cited. And the true rule now recognised in the Courts of Chancery, both in England and this country, is that laid down in Lord *Alvanley,* in *Campbell* vs *Walker,†* that a trustée purchasing the trust property, is liable to have the purchase set aside, if in any reasonable time thereafter, the *cestui que trust* makes known his dissatisfaction.‡

If the general interests of justice inhibit the purchase of the trust property by the trustee, either by himself or an agent, it follows necessarily that he cannot purchase jointly with another. The plaintiff, by whatever name he may be technically designated, must be regarded in equity, as a trustee, subject to all the rules of law that are applicable to purchases made by individuals standing in that character. And a purchase made by the defendant for the joint benefit of himself and the plaintiff, may be considered as if made by the plaintiff himself, if it were necessary. If a trustee purchases the trust property, and receives the proper evidences of title, his title will prevail against all strangers, and he may re-claim the property if dispossessed, or may maintain an action for any injury it sustains. But he cannot enforce a contract entered into, in contemplation of a purchase which is subsequently made. The policy of the law forbids the

* 3 Ves. jr, 750.

†5 ib. 680

‡1 Story's Eq 317, 18 & '19. and cases referred to.

trustee from speculating upon the confidence reposed in him; and by removing temptation makes him incapable of doing so; and *equity* can never enforce a contract, denounced by the policy of the law, the more especially when the public interest does not demand relief.

In treating of agreements in fraud of the policy of the law, Mr. Justice *Story*, in his *Treatise on Equity*, says: "In general, (for it is not universally true,) where parties are concerned in illegal agreements or other transactions, whether they are *mala prohibita*, or *mala in se*, Courts of Equity, following the rule of law, as to participators in a common crime, will not, at present, interpose to grant any relief—upon the known maxim *in pari delicto potior est conditio defendentis et possidentis.*" The exceptions to the general rule, are found to be cases where the public interest would be promoted by granting relief: and then it is given to the public through the party. As coming within the exception, may be enumerated contracts violative of the laws to prevent usury, gaming, &c. There, the policy of the State demands relief. The learned author just cited remarks—"The old cases often gave relief, both at Law and in Equity, where the party would otherwise derive an advantage from his iniquity: but the modern doctrine has adopted a more severely just, and probably politic and moral rule, which is to leave the parties where it finds them, giving no relief, and no countenance to claims of this sort."[*] To the same effect are *Carrington* vs *Caller*, and *Holder* vs *Meggi-son.*[†]

Influenced by these considerations, we are brought

[*] 1 Story's Eq. 295, '6 and '8, and cases cited in notes.

[†] 2 Stewart, 175.

to the conclusion that it is incompetent for equity to enforce the performance of the agreement set up by the bill, and must therefore leave the plaintiff, in the language of a very great Judge, to " a sole reliance upon personal honor."

In attaining this conclusion, we have not thought it necessary to consider the discretionary power exercised by Courts of Equity, upon applications for the specific performance of contracts, but have placed our decision upon the ground of the invalidity of the agreement.

In the case of *Brannan, et al.* vs *Oliver,*[*] in some of the reasoning employed in favor of the right of an administrator to purchase at a sale of the intestate's estate, the Court may seem to countenance the right of every description of trustee to purchase the property of his *cestui que trust*, when sold under an order of Court, and at public auction. But the *gravemen* of the argument employed, is this, that it was a practice of long continuance in this State, for executors and administrators to purchase at sales of the estates they represented, and that incalculable injury would result from a decision in opposition to that practice. And further, that the widow or some near relative was most usually the personal representative, and solicitous to purchase some portion of the estate, and unless allowed to do so *directly*, would procure some third person to become the purchaser, under such circumstances as to prevent detection, and procure through him the ownership. Neither of which reasons, have any application to one circumstanced as the plaintiff. So much as was said in that case, touching sales at auction under the order and su-

[*2 Stewart 47.]

pervision of a Court, was intended not to justify a departure from the strict rule; but to shew that a departure, to which we were forced, in order to prevent the unsettling of titles and consequent litigation, was the less to be regretted in such a case; the opportunities for the detection of fraud being more favorable than where the sale was private. It may be very well to remark further in regard to that case, that it does not determine the right of all administrators and executors to purchase, but only such as have an interest coupled with the trust. It is not pretended that the plaintiffs' was more than a naked trust.

The decree is affirmed.

GOLDTHWAITE, J., not sitting.