McCARTNEY ET ALS. vs. CALHOUN ET AL.

1. The purchase by an administrator at his own sale, to be valid, must be fair and *bona fide*. If it appear that he purchased the property at less than its value, has never accounted for the proceeds, and is insolvent, a court of chancery will set aside the sale not only as against him, but as against purchasers under him with notice.

Error to the Chancery Court of Talladega. Tried before the Hon. David G. Ligon.

The facts of this case, so far as they are necessary to elucidate the opinion, are briefly these: David Calhoun, the father of the defendants in error, died in 1826, in Franklin county, Georgia, possessed of the slaves in controversy and other property, and Matilda Calhoun, his widow, who afterwards intermarried with William King, together with the said William, administered on his estate, and took the property into their pos-

session. It does not appear by the record that the estate was much, if at all in debt, but King, the administrator, procured an order of the Court of Ordinary for the sale of the slaves, under which he sold them and became himself the purchaser at the price of $1020, which the evidence shows was $500 less than their intrinsic value. King afterwards, and without having accounted for the proceeds of the sale, removed to the State of Alabama, bringing the slaves with him, where he died insolvent, leaving his wife and John C. Calhoun his executrix and executor, the latter of whom sold the slaves as assets of the estate, and became himself the purchaser, but paid nothing on the purchase. John C. Calhoun then died, and Solomon Spence, his administrator, took possession of the slaves and claimed them as the property of his intestate. This was the state of the case, when the bill was originally filed. Subsequently, however, the coroner of Talladega county levied on the slaves under executions against King, and sold them by virtue thereof to McCartney and the other plaintiffs in error, with due notice on their part of the claim of the defendants in error. The chancellor set aside the purchase, and directed an account, which is now assigned as error.

RICE, for the plaintiffs in error:

1. There is nothing to impeach the purchase by the administrator at his own sale.—McLane v. Spence, 6 Ala. 894; same case, 11 Ala. 172.

2. The decree is certainly erroneous as to Baker Dulaney, because although notice to *him* of complainant's right may be shown, yet there is no legal evidence as against Dulaney that notice of complainant's right was given to *the plaintiffs in the execution* under which Dulaney purchased, *before the lien of the execution attached*. To defeat a purchaser at a sheriff's sale, it is not enough to show notice to the purchaser; notice to the plaintiff in execution before his lien attached must also be shown.— Daniel v. Smith & Sorrelle, 9 Ala. Rep.

3. The decree is erroneous in many other particulars—all of which are pressed. For instance, the purchasers of the slaves are charged by the decree with interest on their value from 1827, although they bought since 1841.

WHITE, for the defendants:

1. An administrator who has an interest in the estate, in this State, may purchase at his own sale, but he is held to the utmost fairness.—McLane v. Spence, 6 Ala. Rep. 894. In this case there is abundant evidence of fraud. No note or security is given for the purchase money; no money ever paid; no account ever rendered; the entire estate purchased (with the exception of some half-dozen small articles) by the administrator, and a short time afterwards he removes to a foreign jurisdiction, and dies without having settled the estate, or manifested any disposition to give to complainant and his brother what was due them.

2. A purchaser with notice of an existing equity takes subject to such equity, and in this respect there is no difference between a sheriff's and a private sale.— Williamson v. Br. Bank at Mobile, 7 Ala. Rep. 920 ; Swoope v. Trotter, 4 Por. 27.

DARGAN, C. J.—The general rule of law is, that a trustee cannot become the purchaser of the trust estate at his own sale, and we regret that an exception to it has ever been permitted to grow up in this State; for it is a salutary principle that forbids the character of both seller and buyer to be united in the same individual, as the interest of others must be involved in the act of sale. But at an early day this court held that an executor might become a purchaser at his own sale, which if fairly made could not be set aside, (Brannon v. Oliver, 2 Stew. 47) ; and although this case has been frequently questioned at the bar, yet it has never been overruled.—Beene v. Saltmarsh, 4 Porter 283 ; McLane v. Spence, 6 Ala. 894. We must therefore adhere to it, for it would probably be productive of more mischief than good now to depart from it. But in order to give validity to such a purchase, it must appear that the sale was fair and *bona fide.* If the circumstances connected with the transaction do not show this, a court of equity must set it aside, and hold the executor a trustee for those interested in the due administration of the estate. Applying this test to the facts of the case before us, we have no hesitation in saying that the purchase of King, the administrator, in right of his wife, must be set aside. The evidence conclusively shows that the slaves were of much greater value at the time of the sale than the administrator gave for them;

that he has never accounted for or paid the sum bid, but in a short time afterwards removed to this State, bringing the slaves and the children of the deceased with him; and that he is now dead and his estate insolvent. These facts within themselves would require a court of equity to set the sale aside. In the case of McLane v. Spence, 6 Ala., the facts were that the slaves, twelve in number, were sold in one lot, and the administrator became the purchaser at a sum less than their value, and less than they would have brought had they been sold separately. The court said, "it would not avail the administrator to show that he intended no fraud; that to support a purchase by an executor at his own sale, there must be no unfairness—the property must be exposed to sale in the ordinary mode, and under circumstances to command the best price." The sale was set aside. In the case before us, the administrator purchased a negro man, a woman and her four children, for one thousand and twenty dollars; the value of which (from the testimony of all the witnesses) at the time of the sale, must have been over fifteen hundred dollars. There was not, so far as we are informed, any urgent necessity for selling them; there were no debts pressing the estate, if indeed the estate owed any; nor was there any need of selling for the purpose of distribution. No reason is assigned why the slaves were sold at a sacrifice of their value, nor has the administrator ever paid or accounted for the purchase money. He has merely gone through with the form of a sale, without the slightest benefit resulting to the estate, but on the contrary to the prejudice of the interest of the distributees. To sustain such a sale under these circumstances would be to open a door to executors and administrators to speculate on the assets of the estates they represent to the prejudice of those whose interest they are bound to protect. We must therefore hold the sale void and the slaves liable to distribution.

But it is urged on the part of those who purchased the slaves at sheriff's sale as the property of King, that they have obtained a title that a court of equity ought to protect. But they are not bona fide purchasers. Independent of their being purchasers at sheriff's sale, they admit in their answers that they had notice of the claim of the complainants before they made their purchase. They therefore purchased at their own risk, and occupy no better ground than the administrator did.

We have examined the instructions of the chancellor to the register in taking the accounts. They conform strictly to the equities of the parties, and we have only to add that the decree must be affirmed.

CHILTON, J., not sitting.