# PAYNE *vs.* TURNER.

[BILL IN EQUITY TO SET ASIDE PURCHASE BY ADMINISTRATOR AT HIS OWN
SALE.]

1. *Jurisdiction of equity to set aside purchase by administrator at his own sale.*—The chancery court has jurisdiction, at the suit of the distributees of an intestate's estate, to set aside a sale by the administrator of personal property, under an order of the probate court, at which the administrator himself became the purchaser.

2. *When equity will set aside such sale and purchase.*—The purchase of a slave by the administrator in this case, at a sale made by himself under an order of the probate court, was set aside at the instance of the distributees of the estate, on proof that very few persons were present at the sale; that only one bid was made; that the price at which the slave was knocked off was less, by from $200 to $400, than her real value; that the administrator made no effort to attract a crowd at the sale, and declined to impart information as to the time and place of sale to the intestate's father, who, as he knew, desired to purchase.

3. *Offer of indemnity.*—In a bill filed by the distributees of an intestate's estate, seeking to set aside a purchase of slaves by the administrator, at a sale made by himself under an order of the probate court, an offer of indemnity is not necessary.

THE bill in this case was filed by John B. Turner and others, as distributees of the estate of Cynthia Payne, deceased, (formerly Cynthia Turner,) against Isaac W. Payne, who was the husband and administrator of said Cynthia; and sought to set aside the sale of a slave by the defendant, as such administrator, under an order of the probate court, at which he himself became the purchaser. The defendant and said Cynthia Turner were married in 1856, and the latter died during the next year, intestate, and without children. Letters of administration on the estate of his said wife having been granted to the defendant, he procured an order from the probate court, on the 11th October, 1858, for the sale of a negro woman belonging to the estate, who was appraised at $1,000. The sale was made in November, 1858, and the

defendant became the purchaser, at the price of $800. The bill charged, that the sale was not advertised as required by law; that very few persons were present at the time of sale; that the administrator concealed from the intestate's father, who, as he knew, desired to purchase the slave, the time and place of sale; that specie was required at the sale, although such demand was not customary; and that the slave was worth from $1200 to $1500. The defendant answered the bill; denying all the charges of fraud and unfairness; insisting that all the requirements of the law were complied with, and that the sale was fairly conducted; and demurring to the bill for want of equity—" 1st, because complainants have a complete remedy at law; 2d, because complainants do not offer to pay into court the amount for which said slave was sold, or otherwise to indemnify said estate against loss from the death of said slave before she could be 'resold, or by her not bringing so much at a second sale as at the first; and, 3d, because complainants do not offer to pay respondent such expenses, trouble and risk, as he has incurred with said slave since the sale." The chancellor overruled the demurrer, and, on final hearing on pleadings and proof, rendered a decree for complainants; and his decree is now assigned as error, together with the overruling of the demurrer to the bill.

B. T. Pope, with Jas. B. Martin, for appellants.—1. The bill is without equity, because complainants had an adequate remedy at law, by application to the probate court to set aside the sale.—Crayton v. Johnson, 27 Ala. 503; Perrine v. Carlisle, 19 Ala. 686; Love v. Crook, 27 Ala. 624; Machem v. Machem, 28 Ala. 374; Vaughan v. Holmes, 22 Ala. 593.

2. As to the necessity of an offer of indemnity, see Gunn v. Brantley, 21 Ala. 633; Martin's Heirs v. Tenison, 26 Ala. 738; and authorities cited in Shepherd's Digest, 296, § 6.

3. On the pleadings and proof, the case is with the appellant. His right to purchase at his own sale is undis-

Payne v. Turner.

puted; and a critical examination of the evidence will show, that the sale was conducted fairly, and in the usual manner. Under the repeated decisions of this court, the purchase is valid.—McLane v. Spence, 6 Ala. 897; Saltmarsh v. Beene, 4 Porter, 283.

WM. S. EARNEST, *contra*, cited McCartney v. Calhoun, 17 Ala. 301; Montgomery v. Givhan, 24 Ala. 568; and Andrews v. Hobson, 23 Ala. 219.

STONE, J.—In the case of McLane v. Spence, (6 Ala. 894,) speaking of a sale at which the executor became the purchaser of slaves sold by himself, this court said: "We think it clear that this sale could not be supported, if contested by legatees or creditors; but, upon a proper proceeding, would have been set aside, and a re-sale ordered. * * * * But, however irregular and voidable such a sale may be, it is not a nullity. The title would pass to the purchaser, until divested by a proceeding against the executor, having that for its object." This is an authority for the proposition, that though a sale and purchase by the personal representative of an estate may be voidable on a direct proceeding, when there has not been fairness in the sale; still the sale cannot be pronounced void, when it comes incidentally before the court. We have no statute, which either authorizes or requires a confirmation by the probate court of a sale of personal property made under its order. Hence, the *direct proceeding* necessary to set aside such sales, must be one instituted for that specific purpose. We do not doubt the power and jurisdiction of the chancery court, to entertain an application having this for its object.

[2.] The question of purchases by executors and administrators at their own sales has been frequently before this court; and while we have steadily refused to disturb the principles settled in the early cases of Brannon v. Oliver, (2 Stew. 47,) and Beene v. Saltmarsh, (4 Por. 283,) it has nevertheless been, and still continues to be, a source of regret, that so salutary a rule as that which forbids the union in one person of the antagonistic relations of seller

and buyer, should ever have been broken in upon. It is, however, with us, a rule equally inflexible,. that we will not enlarge the exception, which was inaugurated in the case of Brannon v. Oliver.—See McLane v. Spence, *supra;* Cunningham v. Rogers, 14 Ala. 147; McCartney v. Calhoun, 17 Ala. 301; Andrews v. Hobson, 23 Ala. 219; Montgomery v. Givhan, 24 Ala. 568, 584.

In McLane v. Spence, *supra*, it was said, "To support a purchase by an executor or administrator at his own sale, there must be no unfairness; the property must be exposed to sale in the usual and ordinary mode, and under such circumstances as to command the best price." In McCartney v. Calhoun, *supra*, the language of the court was, that, "in order to give validity to such a purchase, it must appear that the sale was fair and *bona fide."* Looking into the testimony in this cause, we think the following facts are established: 1st, that the slave was sold for a sum less than her value, by from two to four hundred dollars; 2d, that very few persons were present at the sale—no competition in bids offered—and no effort made by the administrator to attract a crowd, so as to secure a sale at the best price; 3d, that Mr. Payne knew that the elder Mr. Turner wished to purchase the slave, and, to use a mild expression, he betrayed a hesitancy, if not a reluctance, in having him informed when the sale would take place; and this, too, when the sale had been advertised, and Mr. Payne knew the time when the sale would come off. The sale was not made under *such circumstances as to secure the best price;* and it is difficult to resist the conclusion that there was unfairness in the sale.

[3.] It was not necessary in this case to make to Mr. Payne any offer of indemnity. If the purchase-money had been paid by him, it had been paid to himself. If he has paid out money, he has paid it in his own wrong, and, on another sale, will have the means of indemnifying himself.

The decree of the chancellor is affirmed.