# Cottingham *v.* Moore, *et al.*
# and
# Moore, *et al. v.* Cottingham.

*Bill in Equity to have Sale of Decedent's Lands set aside and Cancelled.*

1. *Purchase by personal representative of decedent's lands; when valid.*—An executor or administrator who is a judgment creditor of his testator or interstate holding an execution

[Cottingham v. Moore *et al.* and Moore *et al.* v. Cottingham.]

lien, has such an interest in the lands of the decedent, as that at the sale of such lands for the payment of the debts, he may become the purchaser thereof, provided there is no unfairness in the sale and the property is sold in the ordinary method, and under such circumstances as will command the best price.

APPEAL from the Chancery Court of Bibb.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by John H. Moore, Viola Moore, J. C. Moore, Coker Moore and Pearl Moore, against M. L. Cottingham.

The complainants are the children of Robert B. Moore and Martha Ann Moore, and claim the interest in the lands as devisers under the will of Eleanor Coker, the mother of Martha Ann Moore. The respondent, M. L. Cottingham, claims the lands under a purchase of the lands made by him as administrator *cum testamento annexo* of the estate of Eleanor Coker, deceased. The purpose of the bill and the facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

On the final submission of the cause upon the pleadings and proof, the chancellor rendered a decree granting the relief prayed for and ordered a reference to the register, that he might state an account between the parties to the suit. In this decree ordering the reference, the chancellor directed the register to credit the defendant with the sum of four hundred dollars (the amount paid by him for the land) as of the date of the death of Martha Ann Moore, and gave further directions as to the credits that should be allowed the defendant Cottingham. Upon the coming in of the register's report, the chancellor rendered a decree granting the relief prayed for in accordance with the report of the register. From this decree the defendant Cottingham appealed and assigned as error the rendition of each of the decrees. In this court, by agreement between the parties, the complainants made cross assignment of error in which they assigned as erroneous that portion of the decree of the chancellor

in which he directed the register to allow the defendant the several items of credit in the statement of the account.

LOGAN & VANDEGRAFF, for appellant Cottingham, cited *Cochran v. Miller*, 74 Ala. 50; *Wiswall v. Stewart*, 32 Ala. 433; *Charles v. Dubose*, 29 Ala. 367; *Sherrod v. Sherrod*, 98 Ala. 543; *Wolffe v. Leob*, 98 Ala. 433; *Taylor v. Harwell*, 65 Ala. 1; *Griffin v. Pringle*, 56 Ala. 486; *Hillingsworth v. Hillingsworth*, 65 Ala. 321.

H. A. JONES and ELLISON & THOMPSON, *contra*, cited *Campbell v. Noble*, 110 Ala. 382; *Gindrat v. Winter*, 96 Ala. 162; *Wilkerson v. May*, 69 Ala. 34; *Randolph v. A. B. Co.*, 104 Ala. 363; *Ramsey v. Marsh*, 13 Am. Dec. 717; *Fletcher v. Tyler*, 92 Ky. 145; *Bodine v. Arthur*, 91 Ky. 34; 20 Am. & Eng. Ency Law, 865; *Banks v. Speers*, 97 Ala. 569; *Willis v. Willis*, 16 Ala 652; *Munden v. Bailey*, 70 Ala. 63.

DOWDELL, J.—Eleanor Coker died April 28th, 1876, leaving a last will and testament which was duly probated in the probate court of Bibb county. By this will she devised and bequeathed all of her estate, consisting of real and personal property, subject to the payment of her debts, to her niece Martha Ann Moore and Robert Benning Moore, husband of said Martha, "and the heirs of their body." The clauses in the will occurring subsequent to the one containing the above devise and bequest clearly manifest the purpose and intention of the testatrix to create in the said Martha Ann a life estate with remainder to her children, and it is upon this construction of the will that the present bill is filed. Robert Benning Moore, the said husband, was made executor, but failed to qualify as such. The respondent Cottingham took out letters of administration *cum testamento annex*, and entered upon the duties of his office. This was in 1876 and shortly after the probate of the will. In January, 1877, the land, the subject matter of this controversy, was sold under the decree of the probate court for the purpose of paying the debts of the said estate,

It is admitted by the bill that the proceedings had in the probate court for the sale of the land were regular on their face; but it is charged that the probate court was imposed upon by the administrator by false statements contained in his petition for the sale of said land, in his averments as to the existence of debts against the estate and as to the insufficiency of personal property for the payments of debts, and that in this respect the administrator was guilty of actual fraud upon the rights of complainant. It is also charged in the bill, that the administrator became the purchaser at the sale, buying through an intermediary. The life tenant, Martha Ann Moore, died in June, 1895, and the bill was filed in May, 1897. The prayer for relief is in alternative—"if the complainant be mistaken in their charges of actual fraud by the administrator in procuring the sale of said land, then they ask to disaffirm the sale and have an accounting, offering on their part to do equity." On a final submission of the cause on the pleadings and proof, it was determined by the decree of the chancery court that there was no fraud committed by the administrator in the proceedings before the probate court for the sale of the land, but relief was decreed complainants under the alternative prayer of the bill and an accounting was had. From this decree the respondent Cottingham prosecutes his appeal to this court.

Under the view which we take of the case as presented by the record, we think it unnecessary to notice those questions discussed by counsel growing out of the accounting had under the decree. We may here make the passing observation, that as to the clause of the will, which provides that in the event of the death of Martha Ann Moore the property devised and bequeathed should remain in the hands of Robert Benning Moore, until the children of Martha Ann became of age, and then to be divided among them, that it is unimportant under our view of and for the purposes of the case as now presented, to determine the nature or character of trust created in said Robert Benning Moore. We think the proof amply sustains

the chancellor in holding that there was no fraud practiced by the administrator in procuring a sale of the land for the payment of the debts of the estate. The great weight of the evidence, by disinterested witnesses, shows that the purchase price bid and paid for the land was its highest market value. The fact is also shown, that the administrator was a judgment creditor of the testatrix, with an execution lien on the land in question. The amount of this judgment with interest was something over $200. There were also other creditors of the estate. The price bid and paid for the land was four hundred dollars. We have then a case, as presented by the record, of a bill filed by the remaindermen after the termination of the life estate, against the administrator, who is a judgment creditor with an execution lien on the land sold, buying at the administrator's sale made under the decree of the probate court for the payment of debts of the estate, without any just imputation under the facts of fraud or unfairness in the sale and purchase, praying a disaffirmance of the sale and for an accounting.

No principle of equity is more firmly engrafted on the jurisprudence of this country than that a purchase by a trustee for his own benefit at a sale of the trust property, is voidable at the option of the *cestui que trust,* and will be set aside on timely application made for that purpose. And in the application of this rule it is unimportant whether the purchase be made directly or indirectly, in person, or through an intermediary who subsequently reconveys to the trustee, and without regard to the question of fairness in the purchase. This doctrine is too familiar to call for citation of authorities. Such sales, however, are not *per se* void, but only voidable at the option of the beneficiary or *cestui que trust,* when seasonably expressed, though in some adjudged cases there may be found loose expressions to the effect that the purchases of trustees are void, or that a trustee cannot purchase at his own sale. See *Charles v. Dubose,* 29 Ala. 367; *Calloway v. Gilmer,* 36 Ala. 354; and authorities cited in those cases. But this salutary doctrine, not the creation of legislation, but'

of a zealous care of the courts for the rights and interests of those standing in confidential relations, is not without limitation when applied to executors and administrators who have an interest in the property sold. As was said in *Calloway v. Gilmer, supra*: "To this eminently wise and conservative principle, the previous decisions of this court require us to recognize a single exception—that is, that such executors and administrators *as have an interest in the property sold*, may purchase at a sale of the goods of the estate, provided there is no unfairness, and the property is exposed to sale in the ordinary mode, and under such circumstances as will comand the best price;" citing *Brannon v. Oliver*, 2 Stewart, 47; *Saltmarsh v. Beene*, 4 Port. 283; *McLane v. Spence*, 6 Ala. 894; *Julian v. Reynolds*, 8 Ala. 680, 683; *McCartney v. Calhoun*, 17 Ala. 301; *Andrews v. Hobson*, 23 Ala. 235, 236; *Montgomery v. Givhan*, 24 Ala. 579; *Charles v. Dubose*, 29 Ala. 371.    While in *McCartney v. Calhoun, supra, Andrews v. Hobson, supra*, and *Montgomery v. Givhan, supra*, there may be found expressions of regret at the existence of this exception, yet the rule as laid down in *Brannon v. Oliver, supra*, and limited in *Saltmarsh v. Beene, supra*, and *McLane v. Spence, supra*, had been adhered to by this court. No attempt has been made to answer the forceful reasoning employed in the case of *Brannon v. Oliver*. And in addition to what was there said, it might be added that under our law in sales by an administrator under the decree of the court, the court and not the administrator, is the real vendor, and such sales must be made at public auction, and receive the judicial sanction of the court before any title can pass to the purchaser. But in what we have here said, we do not wish to be understood as intimating any intention of extending the exception to the rule in cases of administrators and executors purchasing at their sales, further than such as have an interest. The requirements of the case we have in hand do not call for any extension. The vital and material inquiry here is as to what character of interest will bring

the administrator within the exception.  In the case
of *Brannon v. Oliver, supra,* the character of the inter-
est of the administrator was that of an heir or dis-
tributee of the estate.  In the case of *Andrews v. Hob-
son,* the character of interest was that of creditor.  But
in the latter case it was held that Hobson could not
come within the exception under consideration, not
being an executor or administrator, but a trustee un-
der a deed.  No distinction, however, was made in
the opinion of the court, as to the character of inter-
est, between that of heir and that of creditor.  In
*Montgomery v. Givhan,* while the executor was a son
of the testator, the character of interest under con-
sideration was that of creditor; the purchase, how-
ever, in this case was not upheld because of a want
of fairness in the transaction.  No distinction was
drawn as to the nature of the interest requisite to
bring the executor or administrator within the ex-
ception.  Although the administrator who is a cred-
itor may have no estate or title in the land sold for
the payment of debts, still it cannot be asserted that
he is without interest in the property sold, being a
judgment creditor of the testator or intestate with an
execution lien upon the very property that is sold.  In
the case of *Calloway v. Gilmer, supra,* it was urged in
argument by counsel that the right to purchase by
executors or administrators having an interest in the
property sold, should be limited and confined to pur-
chases at sales of personal property, but the court de-
clined to assent to that view.

Under the facts of this case, the proceedings in the
probate court for the sale of the land being regular,
and the administrator having an interest as a judg-
ment creditor with an execution lien on the property
sold, the price bid and paid being the full market
value of the land, and the sale being free from any
unfairness, the sale should not be set aside.  The de-
cree of the chancellor must be reversed on the appeal
of M. L. Cottingham, and a decree will be here ren-
dered dismissing complainants' bill.  The cross-appeal
of John H. Moore *et al.* is affirmed.

[Cottingham v. Moore *et al.* and Moore *et al.* v. Cottingham.]

ON APPLICATION FOR REHEARING.

On the former hearing of this case, it was not a disputed question in argument that Cottingham was the owner of the judgment and execution in favor of Foshee against Eleanor Coker. This was treated as a fact by both parties, and indeed, it was conceded in argument of counsel for appellees. While it is true that the written transfer of the judgment, as copied into the record is without date, yet the recitals in this transfer as to the calculation and payment of interest on said judgment is a circumstance tending strongly to show that a transfer was made even before Cottingham obtained letters of administration upon the estate of said Eleanor Coker. There is another reason why complainants are not entitled to relief, which we did not deem it necessary to notice upon the former hearing, considering what we had said as being conclusive of any right to recover, and that is that complainants were guilty of *laches* in the enforcement of what they allege to be their rights. More than twenty years elapsed between the time of the sale of the lands under the proceedings had in the probate court and the filing of this bill. Nearly two years, lacking only a few days, elapsed between the date of the death of the life tenant and the filing of this bill. The bill was filed on May 17th, 1897, the life tenant died June 5th, 1895. The bill contained averments which were evidently intended to excuse the *laches* or delay of the complainants in pursuing this remedy, but the evidence wholly fails to support these averments as to the complainant, Roland Moore. Roland Moore was twenty-eight years of age at the date of the filing of the bill. He states in his testimony that he knew of his interest in the land as far back as he could remember. He knew of the sale of the land by probate proceedings, for he had heard his mother talk about it. He gives no sufficient reason for the delay in pursuing his remedy. Under the facts he is clearly guilty of *laches*, and certainly was not entitled to relief. Under the familiar rule that all complainants must re-

[Jones & Hooks v. Finch.]

cover, or none, the bill must be dismissed as to all. We see no reason for changing as to the conclusions reached upon the former hearing.