(85 South. 521)

### LAIRD et al. v. COLUMBIA LOAN & INVESTMENT CO. (6 Div. 917.)

(Supreme Court of Alabama. May 20, 1920.)

1. **Executors and administrators** ⊜⟹377, 380 (1)—**Though purchase by administrator void, heirs estopped to assert title without offering equity.**

Though sale and purchase of his decedent's lands by an administrator was so far void as to convey no title at law to him, the receipt and retention of the purchase money by the heirs, or the administrator's application of it in due course of administration, estopped the heirs to assert their legal title against the equity thus vested in the purchaser, except on an offer to do equity by tendering to him the amount bid at the sale under which he claimed.

2. **Equity** ⊜⟹67—**Laches depends on lapse of time and relation of party to property right involved.**

The matter of laches in appealing to the powers of 'equity depends on the lapse of time and the relation of the party supposed to be affected thereby to the property right in controversy.

3. **Executors and administrators** ⊜⟹388(6)—**Successors of administrator, who purchased decedent's lands, not chargeable with laches.**

Complainant investment company, holding' decedent's lands as successor of the administrator, who purchased illegally for himself, together with those under whom it claims, *held* to have been at liberty from 1902, when visible, tangible demonstrations of possession began, to wait until their title was attacked by decedent's heirs without being chargeable with laches.

4. **Executors and administrators** ⊜⟹388(6) — **Successors of administrator, who purchased decedent's lands not chargeable with laches.**

Complainant investment company, holding decedent's lands as successor of administrator, who purchased them for himself, *held* not chargeable with laches prior to 1902, when visible, tangible demonstrations of its possession were made, by its failure to assert title as against decedent's heirs.

5. **Executors and administrators** ⊜⟹388(6)—**No presumption possession of land sold to administrator was hostile to equitable title of successors.**

There is no presumption that any possession of a decedent's land purchased by his administrator was inconsistent with or hostile to the equitable title acquired by successors of the administrator.

6. **Executors and administrators** ⊜⟹380(2)—**Heirs of decedent whose land was sold to representative barred by laches.**

Failure of decedent's heirs to exercise right to sue in court of equity to have equitable title acquired by administrator at sale of decedent's land to himself divested out of him by decree *held* such laches as to authorize the inference the heirs' right so to do is barred as against successor of administrator.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by the Columbia Loan & Investment Company against William A. R. Laird and others to enjoin the prosecution of ejectment actions. From a decree refusing to dissolve temporary injunctions, and overruling demurrers to the bill, respondents appeal. Affirmed.

T. J. Lamar, of Bessemer, and A. Latady, of Birmingham, for appellants.

The complainant does not connect itself with the title at all, in the sense of being a bona fide purchaser. 113 Ala. 419, 21 South. 403. Not being a purchaser of the legal title it is charged with notice of all the infirmities in the title. 2 Story's Equity, subsec. 1502. No compliance is shown with the provision of section 2644, Code 1907. See cases cited thereunder. Tully is charged with notice that Gwin had no title at the time he conveyed, and so is each succeeding grantee. 171 Ala. 552, 54 South. 685. The assignment is champertous, and equity will not enforce. 29 Ala. 276. The bill is barred by laches. 164 Ala. 414, 51 South. 393.

Weakley & Rice, of Birmingham, for appellee.

Heirs cannot claim land after retaining and enjoying the fruits of the sale thereof for 36 years. 129 Ala. 625, 30 South. 34, 87 Am. St. Rep. 81; 186 Ala. 234, 65 South. 183; 164 Ala. 414, 51 South. 393; 72 Ala. 373; 201 Ala. 649, 79 South. 121, L. R. A. 1918F, 353; 196 Ala. 184, 72 South. 14; 101 Ala. 559, 14 South. 557; 106 Ala. 535, 18 South. 154. No laches is shown, authorities supra, and 106 Ala. 535, 18 South. 154; 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81.

SAYRE, J. By the bill in this cause, filed January 21, 1918, the complainant (appellee), Columbia Loan & Investment Company, seeks to enjoin defendants, who are the heirs at law of A. H. Laird, deceased, from prosecuting actions of ejectment for the recovery of land which had been in the ownership and possession of their ancestors at and before the time of his death in 1876. By their actions at law defendants are seeking to enforce the legal title which descended to them from A. H. Laird. The date at which those actions were filed is not stated in the pleadings. Complainant traces its claim back

_____

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

through mesne conveyances to M. M. Gwin. In 1877 Gwin was administrator with the will annexed of the estate of Laird, and in that year procured from the probate court of Jefferson an order for the sale of the land in controversy, along with other lands, for the payment of the debts of Laird. At the sale, February 1, 1878, said administrator became the purchaser of the land here in suit, and thereafter reported the sale, and that he was interested in the estate, being the husband of one of the heirs and distributees, and as administrator was ready and willing to be charged with the amount at which the land had been struck off to him, and that the sale had been made at a fair and reasonable price. It further appears from the bill that "the said sale was fairly made, and the said lands brought a fair and reasonable price, not greatly disproportionate to their real value." But there is no averment that the sale to Gwin was ever confirmed, or that any deed to him was ever executed. We assume, therefore, that there was no confirmation, nor any deed. Gwin's interest in the land, thus acquired, passed by mesne conveyances, executed and recorded in 1878, 1884, 1886, 1889, 1890, 1901, 1902, and 1914, finally into complainant. In Snow v. Bray, 198 Ala. 398, 73 South. 542, it was held that by the proceeding in the probate court Gwin acquired not the legal title to the land, as complainant concedes. By way of demonstrating an equity, complainant avers:

That the purchase price bid at said administrator's sale for the lands struck off to the administrator "was paid by the said M. M. Gwin, and applied by him, as said administrator, to the payment of the debts of the said A. H. Laird, and whatever balance remained was charged up to the said M. M. Gwin, as said administrator, and a decree therefor rendered in favor of the said several respective heirs and distributees of the said A. H. Laird by the probate court of Jefferson county, Ala.; that the said M. M. Gwin shortly thereafter did discharge the said decree and make full settlement thereof with the said heirs and distributees; * * * that on the settlement of the accounts of the said M. M. Gwin, as such administrator of the estate of said A. H. Laird, he fully accounted for the amount of his said bid for the lands bought at the said administrator's sale, and showed that he applied nearly all of the said proceeds of sale towards the payment of the debts of the said estate; and he distributed the net balance of cash on hand, which was inconsiderable, among said heirs and distributees, according to the said decree of the probate court, which said decree was rendered on, to wit, the 3d day of March, 1881"; that said accounts remain of record in the probate court.

As to possession of the land since the death of A. H. Laird, the averment of the bill is:

That in 1902 "the Monte Sano Land Company subdivided the said land into lots and blocks, and placed a map thereof on record in the said probate court; * * * that the said land was laid off into streets, avenues, lots, and blocks, as aforesaid, and each street, avenue, block, and lot was marked by stobs, signs, and numbers; that the timber was cut and removed from the streets and avenues; that some grading was done in the streets and avenues; that a sign four or five feet square was placed on the said tract of land near the car line advertising the said lots for sale; that the said Monte Sano Land Company sold and conveyed a number of said lots"; that in 1914 complainant did "acquire and become the owner of the said lots, by mesne conveyances from the said Monte Sano Land Company; that since the purchase by orator of the said lots it has continued to be and is now the owner of the said lots; that the said lots constitute a part of the lands particularly described" in paragraph 3 of the bill; that complainant entered into possession under its purchase in 1914 and began to improve the lots, having erected valuable improvements on each of them, and is now in peaceable possession.

In the trial court the several and separate general demurrer of the defendants was overruled, and as well their motion to dissolve the temporary injunction which had been granted by the court. Defendants have appealed.

[1-3] Though the sale and purchase by the administrator was so far void as to convey no title at law, the receipt and retention of the purchase money by the heirs, or the administrator's application of it in the due course of administration, thereafter estopped the heirs to assert their legal title against the equity thus vested in the purchaser (Woodstock Iron Co. v. Fullenweider, 87 Ala. 584, 6 South. 197, 13 Am. St. Rep. 73; Robertson v. Bradford, 73 Ala. 116; Bell v. Craig, 52 Ala. 215), except upon an offer to do equity by tendering to the purchaser the amount bid at the sale under which he claimed (Winters v. Powell, 180 Ala. 425, 61 South. 96). The matter of laches in appealing to the powers of equity depends upon the lapse of time and the relation of the party supposed to be affected thereby to the property right in controversy. According to the bill, visible, tangible demonstrations of possession by those claiming under the purchaser in this case began in 1902. In view of what was done in that year and subsequently, our judgment is quite clear that complainant and those under whom it claims have been at liberty to wait until their title was attacked without being chargeable with laches. Fowler v. Alabama Iron & Steel Co., 164 Ala. 414, 51 South. 393; 4 Pom. Eq. Jur. (4th Ed.) § 1454.

[4-6] Nor can complainant be charged with laches prior to that time. The bill is silent as to possession during the interval between the death of A. H. Laird in 1876 and the improvements beginning in 1902. But by the sale in 1878 complainant's predecessor was invested with an equitable title. No pre-

sumption arises that possession, if any there was in fact, was inconsistent with, or hostile to, the equitable title so acquired. Shorter v. Smith, 56 Ala. 208. Defendant heirs of Laird had the legal title, and with it a capacity to sue in a court of equity, and, by an offer to do equity, have the equitable title acquired by complainant's predecessor at the sale divested out of him by decree, and a failure to exercise that right for more than 20 years is such laches as authorizes the inference that the right to do so is barred in any one of the modes in which that result may be effected. Woodstock Case, supra. The purchaser or his grantee, on the other hand, his adversary not being in possession nor prejudiced by delay, may come into equity at any time to divest the legal title out of the heir and vest it in himself. Smith v. Lusk, 119 Ala. 394, 24 South. 256; Bell v. Craig, supra; Fowler v. Alabama Iron & Steel Co., supra.

The rulings in the circuit court were correct.

Affirmed.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes