[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 18 
This is an appeal from a judgment cancelling a deed and ordering a sale for division. We affirm in part, reverse in part and remand.
In 1962, Rev. Abe Craig died, leaving a will naming his son, Marcus Craig, as executor. The will directed the executor to sell 80 acres of land and use the proceeds to reimburse Marcus for hospital bills, doctors' bills, medical expenses, and attention paid by Marcus on Abe's behalf. The remaining proceeds, if any, were to be divided equally between Abe's seven children, including Marcus. The will was filed for probate in 1962. No claims were filed, and the estate was never finally settled.
In 1963, Marcus deeded the land to himself in consideration of "support and medical bills" of the value of $4,000. The deed was duly recorded. There is no evidence that Marcus personally notified his brothers and sisters of the sale, nor is there any evidence that they knew of it.
On December 20, 1976, Marcus died. The following March, the appellees, Abe's surviving children, filed this action against the appellants, Marcus' widow and children, seeking to set aside the deed as a fraudulent conveyance and to sell the land for division, alleging they had just discovered the deed.
The trial court, after hearing evidence ore tenus, concluded that "the said Marcus Craig was acting in a fiduciary capacity and said conveyance without full disclosure to the persons who held a beneficial interest was a violation of his cestui que trust and the property was not exposed to sale in the ordinarymode and under such circumstances as to command the best price. . . ." [Emphasis ours.] The trial court cancelled the deed and ordered a sale for division.
The appellants' initial contention is that the trial court erred by ruling against them on their defense of the ten-year statute of limitations, Code 1975, § 6-2-33 (2). This section, dealing with actions for the recovery of lands, applies to actions seeking to set aside a deed as a fraudulent conveyance.Hall v. Hulsey, 271 Ala. 576, 126 So.2d 217 (1961); Drummond v.Drummond, 232 Ala. 401, 168 So. 428 (1936).
The burden is upon the party asserting the fraud to show circumstances which would prevent the running of the statute.Hall v. Hulsey, supra. However, the statutory period does not start to run *Page 19 
until adverse possession begins. Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779 (1949); Rowe v. Bonneau-Jeter Hardware Co.,245 Ala. 326, 16 So.2d 689 (1943).
The complaint in this case is silent as to possession. It does not show on its face whether or not Marcus was in adverse possession so as to start the running of the ten-year statute.Ellis v. Stickney, supra. Therefore, the motion to dismiss was properly denied.
Moreover, the evidence adduced at trial was not sufficient to establish adverse possession for ten years. There was testimony that Marcus Craig paid taxes on the land, collected rents, and made no accounting of the profits. However, there is nothing to show that his possession was adverse to the rights of his brothers and sisters. There was no open disavowal of his position as executor brought home to the other heirs with unquestionable certainty, thus putting them on notice that he held the land for himself and not for the estate. See Holt v.Wilson, 75 Ala. 58 (1883); McCarthy v. McCarthy, 74 Ala. 546
(1883).
In addition, appellants contend that the conveyance was proper under established principles of law. They point out that it was unnecessary for Marcus Craig to file a claim in order to recover any indebtedness owed to him by Abe Craig or his estate. We agree, because Abe Craig, in his will, charged his estate with the payment of indebtedness to Marcus. The will created a trust for the payment of the debt, thereby avoiding the statute of nonclaim. Bromberg v. First National Bank,235 Ala. 226, 178 So. 48 (1937); Foster v. Featherston, 230 Ala. 268,160 So. 689 (1935).
Now, we turn to the decisive issue in this cause, whether an executor may, under certain circumstances, convey estate land to himself, and, if so, whether those circumstances are present here.
This Court has consistently held that an executor or administrator may sell estate lands to himself. This practice, discussed at length in the early case of Brannan v. Oliver, 2 Stew. 47 (Ala. 1829), treats the sale as voidable at the option of the distributees of the estate, upon timely application. This rule has a single exception: if the executor or administrator has an interest in the property sold, and the land is sold fairly, in the ordinary mode or way, and so as to command the best price, in such case the sale is not voidable. E.g., Bank of Wetumpka v. Walkley, 169 Ala. 648, 53 So. 830
(1910); Penny v. Jackson, 85 Ala. 67, 4 So. 720 (1888). If one of these elements is absent, the distributees or heirs may avoid the sale for fraud, the burden being upon them to show that their claim was brought within a reasonable time. SeeRandolph v. Vails, 180 Ala. 82, 60 So. 159 (1912).
The reason for departing from the general rule that a trustee may not purchase trust property at his own sale is explained inBrannan v. Oliver, supra. There, this Court recognized that an administrator is considered to be a trustee of the creditors and distributees of the estate, and that his duty as a trustee "obliges him to communicate all information, and to exert all the care and industry necessary to dispose of the estate as advantageously, for his cestui que trust, as if he were selling it for himself." Id. at 49. However, this Court found inBrannan, supra, that this general rule was inapplicable in that case when the defendant, as administratrix, had sold estate property to herself at public auction, with a return of the sale made to the court. The great difficulty in discovering a trustee's violation of duty was alleviated because "there is little danger of unfairness in the sale passing undetected where it is made publicly." Id. at 53. Thus, this exception in favor of executors and administrators purchasing at their sale of the estate, as delineated in Brannan, was limited as follows: "an administrator may purchase at a sale made at public auction, under legal authority, of his intestate's estate," if the administrator or executor has an interest in the estate.
The exception set out in Brannan was further explained inSaltmarsh v. Beene, 4 Port. 283 (Ala. 1837). The Court stated that it was a practice of long continuance in *Page 20 
Alabama for an executor or administrator to purchase at his own sale. The departure from the general rule, which prohibited such a sale, was forced on the Court in Brannan in order to prevent the unsettling of titles. The Court in Saltmarsh noted that such a sale, to be valid, must be public and under the order or supervision of the court, "the opportunities for the detection of fraud being more favorable than where the sale was private."
The exception thus allowed was criticized in subsequent decisions. E.g., Daniel v. Stough, 73 Ala. 379 (1882); Callowayv. Gilmer, 36 Ala. 354 (1860); McCartney v. Calhoun, 17 Ala. 301
(1850). This Court stated repeatedly that the exception was not to be extended beyond the limitations set out in theBrannan case. Payne v. Turner, 36 Ala. 623 (1860); Andrews v.Hobson's Administrator, 23 Ala. 219 (1853).
The exception has been thus permitted in accordance with the limitations expressed above, although there appear to be few modern cases dealing with the rule. Those sales affirmed have been at public auction, under order of the probate court or with a return made to the court. E.g., Cottingham v. Moore,128 Ala. 209, 30 So. 784 (1901). One case approved a private sale by an executor to his wife, but only after unsuccessful attempts to obtain bids and only after the distributees had actual notice of the sale and an opportunity to purchase at the same price. Warrick v. Woodham, 243 Ala. 585, 11 So.2d 150
(1942).
Sales to executors or administrators have been disapproved upon a showing of the absence of one of the required elements:
(1) no interest in the estate, Daniel v. Stough, supra; Jamesv. James, 55 Ala. 525 (1876); Saltmarsh v. Beene, supra;
 (2) not sold in the ordinary mode, McLane v. Spence, 6 Ala. 894
(1844);
(3) not sold so as to command the best price, Payne v.Turner, supra; McLane v. Spence, supra;
(4) not sold fairly, Payne v. Turner, supra; Montgomery v.Givhan, 24 Ala. 568 (1854); McCartney v. Calhoun, supra.
Were any of these elements absent in the instant case? We think so.
The will does not specify the mode of sale, and does not expressly restrict the exercise of the power of sale to a public sale. But for the fact that the executor here purchased at his own sale, the general power of sale created in the will could very well include a private sale. However, as discussed above, the limited exception permitting an executor to purchase at his own sale has been confined by our cases to public sales. We conclude that "ordinary mode" means a public sale unless the sale is to a third person and that the private sale in the instant case was not in the ordinary mode.
Moreover, we find that, under the circumstances of this case, the sale was unfair. Marcus Craig wore several hats simultaneously: he was executor, creditor, devisee, and co-tenant. In Calloway v. Gilmer, supra, the executor was also a guardian of some of the devisees. The Court held that the two offices could not be separated.
 ". . . No person can become a purchaser of an interest in property, where he has a duty to perform which is inconsistent with the character of a purchaser; in other words, where a person stands in the situation of a trustee for others, and bound as such to protect the general interests of those for whose benefit the trust was created, in regard to the subject of the sale, he is incapacitated from purchasing for his own benefit, no matter by whom, or under what proceeding the sale is made. . . ."
* * * * * *
 "Again; the defendant, as executor, had as many advantages of superior information as to the situation and value of the land, and as much control of the sale, as he would have had if the property had been held and sold by him as guardian. The superior knowledge which a trustee has the means of acquiring, as to the condition and value of the property, and the power he has to control or affect the sale, occupy a prominent place among the *Page 21 
reasons for the rule which disqualifies him from purchasing at his own sale of the trust property.— Ex parte Lacey, 6 Vesey, 625; Ex parte James, 8 Vesey, 337; 1 White Tudor's Lead. Cases, (3d ed.) top pp. 198-9, 201, 207, 217. Upon principle, therefore, it seems to us that, where the same person is executor of the will and guardian of some of the devisees, he is incapacitated from purchasing the property, an interest in which is devised to his wards, although the sale is made by him in his capacity as executor, and not as guardian, and although he may have such an interest in the property as, under our decisions, would give him the right to become the purchaser, if he occupied no other fiduciary relation towards the persons to be affected by the sale, than that of executor of the devisor."
36 Ala. at 359-61.
The situation in the instant case is analogous. We hold that Marcus Craig's sale to himself was inherently unfair and in violation of the fiduciary duties owed to the distributees and heirs, aside from his position as executor.
For similar reasons, the appellees' claim is not barred bylaches. In James v. James, supra, it was stated that knowledge of facts entitling one to relief and lack of diligence in enforcing those rights must coexist in order for laches to bar a claim. Laches was found to operate in that case because of the publicity of the auction sale, recordation of the deed, change of possession, and residence of the claimants near to the lands.
The only circumstance present in both the James case and the instant case is the recording of the deed. Recordation of a deed operates as constructive notice of the contents of the deed and applies to those whose duty it is to search the records, usually subsequent purchasers. Spradling v. May,259 Ala. 10, 65 So.2d 494 (1953); Pittman v. Pittman, 247 Ala. 458,25 So.2d 26 (1945). The appellees here were not bound to search the record for evidence that Marcus Craig had violated his fiduciary duties. They were certainly entitled to actual notice
of any sale, and cannot be said to have acquiesced in a private sale of which they had no knowledge.
Therefore, we are in accord with the trial court's judgment regarding the issues discussed above. However, we must reverse and remand this cause for a determination of the amount of the debt, if any, owed by the Abe Craig estate to Marcus Craig, the payment of which Abe Craig provided for in his will and laid a charge therefor upon the land.
Normally, cancellation of a deed requires a tender to the purchaser of the amount given in consideration. Laird v.Columbia Loan Investment Co., 204 Ala. 246, 85 So. 521
(1920). Reimbursement may be offset by the value of the use of the land which the purchaser has enjoyed prior to cancellation of the deed. Walling v. Thomas, 133 Ala. 426, 31 So. 982
(1902); Gunn v. Brantley, 21 Ala. 633 (1852).
Evidence was admitted to prove some of the indebtedness. The trial judge expressly reserved ruling on the admission of other documents offered to show the amount of the indebtedness. Upon remand, the trial judge should rule on the offer of this evidence and determine the amount of the indebtedness.
For the foregoing reasons, this cause must be affirmed in part, reversed in part, and remanded for proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur. *Page 22